### 7684

### CHRISTIAN v. AUGUSTA AND AIKEN RY. CO.

ELECTRIC CARS—CARRIER—WILFULNESS—PASSENGER.—Under the evidence here tending to show a passenger standing at the station of an electric car motioned it to stop but it ran on about seventy-five yards beyond and then stopped for one and a half minutes the servants inviting the passenger to come to and board the car, but they would not come back to the station for him, verdict based on wilfulness sustained.

Before GAGE J. Aiken October 1909. Affirmed.

Action by W. H. Christian against Augusta and Aiken Ry. Co. in Court of Magistrate E. J. Craig. From circuit order sustaining judgment of magistrate, defendant appeals.

*Messrs. Boykin Wright, Geo. T. Jackson* and *J. B. Salley* for appellant, cite: *Plaintiff could have avoided consequences*

*by ordinary care:* 15 Cen. Dig. 1775, o. q. v., 12 S. E. 1061;
1 Thomp. on Neg. 215, 217, 262; 66 S. E. 964. *No evidence of wilfulness:* 60 S. C. 67; 1 Thomp. Neg. 265; 79
S. C. 209. *No actual damages on which to base punitive:*
6 Thomp. Neg. sec. 7172; 65 S. C. 1; 60 S. C. 67; 77 S.
C. 60.

*Messrs. Hendersons* contra, cite: *Plaintiff not required to
act:* 35 S. C. 483; 38 S. C. 487; 2 Deu. 625; 13 Cyc. 75; 8
Ency. 606. *Case is based solely on wilfulness:* 70 S. C.
418; 77 S. C. 56; 65 S. C. 326.

October 14, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff recovered a judgment
of one hundred dollars in a magistrate's court for alleged
injuries resulting to him from the alleged negligent, wilful
and wanton failure and refusal of the defendant to stop its
electric passenger car in response to his signals at its regular
stopping place at Langley, one of the stations on its trolley
line from Augusta, Georgia, to Aiken, South Carolina, and
for defendant's alleged negligent, wilful and wanton failure
and refusal to run the car back to the station to take him on
there, after having stopped it about seventy-five yards beyond
the station. The appeal is from the judgment of the Circuit Court affirming the judgment of the magistrate.

We cannot help thinking that but for the lack of a spirit
of courtesy and accommodation on the part of the plaintiff
as well as on the part of the defendant's conductor and
motorman, the litigation would not have arisen. The testimony of the plaintiff was to the effect that he signalled the
car, which was equipped with a powerful electric headlight,
plainly several times and continued his signals until the car
came up to the station, and that it nevertheless ran by and
stopped about seventy-five yards beyond the station. The
plaintiff gives this account of what then occurred:

"The car did not stop at the station nor slacken up until it got past the station. Then it ran nearly to the Athletic Hall,—about seventy-five yards—and stopped. The motorman hollowed to me to come on if I wanted to go on that car. I hollowed back at him that he must come back to the station for me, that if I had wanted them to stop anywhere except at the station, they would not have done it, and they must come back to the station for me. It is a fact that they won't stop anywhere except at their stations for passengers even though you flag them at other places. The motorman hollowed back to me that he would not come back, and I refused to go to the car. The motorman then hollowed to the conductor to give him two bells, which is the signal to go ahead. The conductor gave the signal and the car went on, leaving me there. This was the last car going to Clearwater that night and I had to walk a distance of four or five miles. This walk and delay tired me out. I did not get to bed until about three o'clock and was unfit for work the next day. I did not work because I was feeling so badly. I was greatly annoyed and put out at being left."

The account of the motorman was as follows: "I was at my post of duty at the front platform. As we approached Langley I saw no one on the track at the station, but when the car got just about to the station I saw someone back behind some trees at the station. I could not see this man before we got to the station, because he was cut off from my view by the trees. As soon as I saw him I stopped the car. When the car stopped it was about seventy-five yards below the station. I hollowed back at the person who was at the station to come on if he wanted to go on this car. Using an oath, he hollowed back to me that he did not propose to come, that I must come back for him I said that I'd give him a minute and a half to get on the car. He continued to curse and said he wouldn't come. We waited for a minute and a half, and the conductor gave me the signal to go ahead, and we started the car and went on."

It was agreed by counsel that the testimony of the con-
ductor would be the same as that of the motorman, and that
two other witnesses would testify that they "heard the motor-
man say to Christian, 'I will give you one and a half minutes
to get here,' and Christian said, 'I am not, and won't walk a
damn step, and come back to the station.' The car waited
long enough for him to have walked to the car and gotten
on." It was further agreed that the ground between the
car and the plaintiff was level and free from obstruction.

The fact that the car was stopped to allow the plaintiff to
get on tends very strongly to negative the charge that the
motorman saw the signal and wilfully disregarded it; and it
would be difficult to support the judgment for punitive dam-
ages on that ground. There is no doubt, however, that the
defendant had itself fixed a station at which it required
all persons wishing to take the cars to stand, and that in this
instance its agents intentionally refused to back the car
seventy-five yards to enable the plaintiff to get on there. It
is true that the Courts must look at such matters reasonably,
and that they will not do the absurd thing of requiring cars
to stop at an exact spot, when no inconvenience or hardship
is inflicted on the person intending to enter the car. How
much variation from exactness in this respect is allowable
without a violation of duty, depends on circumstances, and
is usually an issue of fact to be determined by the jury or by
the tribunal on which the law imposes the power and duty to
decide the facts. In this case the judgment of the Circuit'
Court must be regarded as an adjudication that stopping
seventy-five yards beyond the station was not a substantial
compliance with the duty of the defendant to stop at its sta-
tion, and that the defendant's agent had no right to require
the plaintiff to go that distance to reach the car.

In view of the comparative ease with which electric cars
may be moved and controlled, it cannot be said that there
was no support in the evidence for the finding of the Court
that the defendant's agents in refusing to bring the car back

to the station wilfully violated the right of the pliantiff to board the car at the station.

The case does not fall within the reasoning and the principles on which either of the cases of *Trapp* v. *Southern Ry.*, 72 S. C. 343, 51 S. E. 919 or *Ussery* v. *Augusta Aiken Ry.*, 79 S. C. 209, 60 S. E. 527 was decided.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.