14384

PAYNE v. ATLANTIC GREYHOUND BUS LINES
(Three Cases)

(188 S. E., 426)

*Messrs. Tobias & Turner* and *Price & Poag,* for appellant,

*Messrs. J. Robt. Martin* and *J. Robt. Martin, Jr.,* for respondents,

November 18, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

There are three cases involved, but all three were tried together in County Court of Greenville County, and the appeal to this Court treats them as one case.

They are actions in tort for the alleged invasion of the rights of respondents, P. O. Payne and his two children, P. O. Payne, Jr., and Carolyn Payne, as passengers at the hands of appellant, a common carrier of passengers for hire, and upon the trial of the cases, there was testimony to the following:

On the early morning of July 20, 1935, before the ticket office opened, respondents boarded one of appellant's well-equipped and modern buses at Bessemer City, N. C., and purchased from the driver of the bus, tickets, that is, a full-fare ticket and a one-half fare ticket, one of the children being under the age for which a ticket is required, if accompanied, from said point to Atlanta, Ga. When respondents got on the bus, the driver assisted them with their baggage, consisting of two grips and two packages. The grips were placed in a rack above the seats, but the bundles were placed and kept on the seats provided for passengers. During the trip P. O. Payne, Jr., became nauseated, and the bus was stopped, and he allowed to get off and walk around for a few minutes, but in the vicinity of Greer this respondent vomited in the bus, and the driver assisted in cleaning the floor thereof, and in fact was very nice and rendered every assistance from the time the child became "sick on his stomach." There is no claim that the driver left undone anything he should have done in reference thereto. When the bus reached Greenville, it was announced that all passengers should get off; that the bus would be mopped and cleaned, but to leave baggage and bundles in the bus; that there would be a stop of 20 or 25 minutes. It was Saturday morning, and experience had taught appellant that on Saturdays there was considerable more passengers than ordinarily, and before reaching Greenville, the driver of the bus had telephoned to the agent of appellant at Greenville advising

of the number of passengers then on the bus for points beyond Greenville. Appellant kept at Greenville an extra bus, a much older model, and not so commodious and not as comfortable as the bus regularly in use, to make extra trips to care for the overflow of passengers. As would be known in railroad parlance, the bus would very often, on week-ends, run in two sections. Following the announcement that all passengers should get off the bus at Greenville for it to be cleaned, respondents and the other passengers left the bus, respondents going to a nearby barber shop "and washed the boy." When respondents returned to the bus for the purpose of entering it to resume their trip thereon, they were informed by the driver that bus had already filled with passengers, and that they could not re-enter; that another bus was being prepared to take passengers who were unable to find seats, and that respondents would have to ride this other bus. Respondents, after an inspection of the other bus, refused to ride same, and demanded their baggage, which was refused, the driver telling them they could get it at Atlanta, and according to the testimony of respondents, they were finally told by the driver of the bus, he did not care how they got to Atlanta.

Of course, in giving the above résumé of the testimony, we have largely followed that of respondents. There was in this case, as in all other contested cases, a conflict in the testimony, but in regard to the cardinal facts, there is little, if any dispute.

It was testified by witnesses for appellant that in addition to the special bus, respondents were informed that another commodious and modern bus of appellant left Greenville for Atlanta by a different and slightly shorter route within a few minutes, and that they could ride such bus. It was undisputed that there was such bus scheduled.

The respondents went from Greenville to Atlanta on a train, reaching Atlanta several hours later than if they had been transported on the original bus, and upon calling for

their baggage, the two bundles could not be found. So much for the general facts.

Paragraphs 2 and 3 of respondents' complaints are as follows:

"(2) That the defendant, Atlantic Greyhound Bus Lines on July 20th, 1935, sold to the plaintiff transportation as a passenger from the City of Bessemer City, in the State of North Carolina, to the City of Atlanta, State of Georgia, upon one of its well-equipped and modern arranged busses and upon reaching the City of Greenville, South Carolina, its agents and servants in charge thereof announced to the plaintiff and passengers thereon that there would be a stop of twenty minutes, said stop being for the purpose of recreation and rest of passengers at its commodious bus station in the City of Greenville designed for the convenience, comfort and accommodations of the plaintiff and other passengers. That the plaintiff, acting upon the custom and the specific instructions of the defendants' agents and servants, took advantage of said stop and rest period, disembarked, leaving packages and baggage in seat occupied from Bessemer City, North Carolina, to Greenville, South Carolina, and returned thereto within time limit for stop, but found said bus upon which he had ridden from Bessemer City, North Carolina, to Greenville, South Carolina, completely occupied and over-crowded by other passengers, the said agents in charge thereof having sold seats and accommodations thereon, which the plaintiff had purchased, to other and new passengers, the defendants' agents and servants insisting upon the plaintiff riding upon an ill-provised, rickety, uncomfortable and unsafe bus, which defendant, its agents and servants had in the demand of extra Saturday travel at said time hastily procured, the defendants' agents and servants driving away taking the could either take passage for the remainder of his journey with his small children upon the said substituted bus or procure passage by extra and outside means.

"(3) That the acts of the defendant in announcing rest

period in Greenville for twenty minutes and thereby inducing the plaintiff to leave first bus and selling said seat which the plaintiff had purchased, and attempting to force the plaintiff to use instead thereof an ill-provised, uncomfortable, dangerous and unsafe means of transportation for the remainder of his journey, and carrying the plaintiff's baggage and personal property on and destroying and losing the same, were high-handed and in violation of the rights of the plaintiff in the circumstances and constituted a wanton, willful trespass upon his rights in the circumstances to his damage in the sum of Three Thousand ($3,000.00) Dollars."

Respondent's answer was a general denial; a specific denial of Paragraphs 2 and 3 of the complaint, and several special defenses. Paragraphs 3, 4, and 8 of the answer were as follows:

"3. Further answering said complaint, the Defendant alleges that on or about the 20th day of July, 1935, it had upon its south-bound bus arriving in the City of Greenville, State aforesaid, a number of passengers for points beyond the said City of Greenville, State aforesaid. That a number of additional passengers for points south of Greenville, South Carolina, were at Greenville and presented themselves for transportation on the defendant's said schedule. That the defendant's agent in charge of said bus made all necessary, required and proper arrangements to furnish reasonable, safe, convenient and adequate accommodations for all such passengers by securing an additional bus for the said southward schedule.

"4. That there was maintained and operated from Greenville on the occasion hereinabove referred to adequate, proper, convenient and safe accommodations for all persons who had either purchased or indicated their willingness to purchase transportation along said route upon the conveyances of this defendant. That reasonable, adequate, convenient and safe accommodations upon the motor vehicles

operated by the defendant were tendered, proffered and made available to the plaintiff."

"8. Further answering said complaint, the defendant alleges that every reasonable convenience and courtesy was afforded the plaintiff while a passenger upon the defendant's motor vehicle. That the bus, or buses, upon which accommodations were available to the plaintiff, on the schedule, hereinbefore referred to, did continue its southward trip upon said route over which the plaintiff alleges to have purchased a contract of transportation without mishap and to the entire enjoyment and comfort of all passengers thereon."

The answer further sets up sole negligence and willfulness of respondents; contributory negligence and willfulness of respondents, and that appellant had discharged its every obligation or duty to respondents, if any such obligation or duty existed.

A trial of the cases resulted in the jury returning a verdict in each case for $333.33 1/3, totaling $1,000.00 in all three cases, according to the transcript of record. We learn from the printed argument of counsel that of the above amount of verdict, there was found $300.00 in each case as punitive damages.

Before, or as the trial of the cases was entered upon, repondents made a motion for the sequestration of witnesses, which motion over the objection of appellant, was granted, and appellant's first exception alleges error in the trial Judge permitting this segregation. The remaining 23 exceptions allege error in the admission of certain testimony; in the failure to grant a motion for a nonsuit as to willfulness or for punitive damages; in the failure to direct a verdict both as to actual and punitive damages; in the charge to the jury; in the failure to grant a new trial *nisi*; and in the construction of Section 8511 of the Code.

The exclusion of witnesses, as admitted by appellant, is purely within the discretion of the trial Judge. He may or may not require some showing as to the ad-

visability of so doing. The record does not disclose that in granting respondents' motion to segregate the witnesses, the Court committed an abuse of discretion. There was no sufficient reason shown for the refusal of the motion to segregate the witnesses, and it was therefore proper to grant the motion when made.

The exception relating thereto is overruled, and this also disposes of Exception 19 alleging error in refusing a new trial on the ground that there should not have been a segregation of the witnesses.

We will consider Exceptions 2, 10, 18, 21, 23, and 24 together, all relating to the failure to check baggage or personal property precluding a recovery for such baggage or personal property lost or damaged, the specific error alleged being; the admission of testimony as to the loss of packages or baggage; the refusal to direct a verdict as to property damages, actual or punitive; the modification of appellant's request to charge a certain portion of Section 8511 of the 1932 Code of South Carolina concerning loss or damage to baggage; the overruling of appellant's motion for a new trial on the ground that respondents could not recover for loss of baggage or personal property unless such property was checked with the driver of the bus; the holding by the Court that it was not mandatory, and did not preclude a recovery for baggage or personal property not checked; and the refusal of a new trial on the ground that to permit a recovery for baggage not checked amounted to a deprivation of appellant's property without due process of law, in violation of Section 5, Article 1 of the Constitution of 1895, and amounted to a denial of the equal protection of the laws.

All exceptions are bottomed entirely upon the provisions in Section 8511 of the Code of South Carolina.

A careful reading of the complaint will disclose that it is purely an action in tort for the invasion of the rights of respondents: (1) For having failed to provide respondents

with a seat on the bus on which they had been traveling, and refusing to allow them to re-enter same, and offering much inferior accommodations to those to which respondents were entitled; and (2) in carrying respondent's baggage on and destroying or losing it.

The answer of appellant in nowise indicates that it was misled by the allegation in the complaint in regard to the loss of baggage and personal property.

The contract of carriage or transportation was not entered into in South Carolina, nor was it to be wholly performed in this State, but was one in interstate commerce, to be performed in North Carolina, South Carolina, and Georgia, beginning in North Carolina and terminating in Georgia, and Section 8511 of our Code has no applicability. And aside from the above, under the facts of this case, this section of our Code would not preclude a recovery for baggage or personal property lost or destroyed, which had not been checked. But as we have hereinbefore construed the complaint, this was not an action to recover the value of lost baggage or property, and the verdict of the jury ($33.33 1/3 actual damages, as we are informed by the arguments of counsel, in each case) negatives that the value of the lost packages was taken into consideration.

Appellant's Exceptions 3 and 4 are identical, although separate and different specifications of error are set forth. The exceptions allege error in refusing to grant a nonsuit on the cause of action for willfulness or for punitive damages at the conclusion of respondents' testimony. In connection with these exceptions, we will consider Exceptions 6, 7, 8, and 9. Exception 6 complains of the refusal of the trial Judge to direct a verdict for appellant on the ground that there was no testimony of any actionable negligence on the part of appellant. Exception 7 is the same as 6, stated affirmatively and in different language. Exceptions 8 and 9 are practically the same and allege error in refusing to direct a verdict for appellant as to punitive damages, which is the

same as a motion for the trial Judge to peremptorily instruct the jury that they could not find punitive damages.

The facts of the case have been hereinbefore set forth, but we very briefly again recite some of them. The respondent, P. O. Payne, and his two children, also respondents, had secured tickets (one child too small to require a ticket) from appellant from Bessemer City, N. C., to Atlanta, Ga., P. O. Payne, Jr., had become "sick on his stomach" during the trip and had vomited in the coach or bus which had been at least partially "cleaned up." When the bus reached Greenville, S. C., all passengers were told to vacate the bus, but to leave their baggage and bundles, that the bus was going to be cleaned. Respondents obeyed these instructions, and upon offering to get back on the bus were prevented from doing so by the same driver with whom they had been riding and the one who had instructed them to get off the bus, the driver stating that the bus had already been filled to capacity, and they would have to continue their journey on an extra bus then being prepared. According to the testimony, respondents, after examining the extra bus, refused to ride thereon and demanded their baggage, which was refused, being told they could get same at Atlanta. The respondent P. O. Payne had also testified that the driver of the original bus told him just before driving off, and following the argument concerning respondents getting on the bus, "I am off schedule now, you can get there (Atlanta) the best way you can."

In view of the testimony just above quoted, and the further testimony that respondents had been refused their baggage until they reached Atlanta, and that when it was called for there, the bundles were lost, and the driver of the bus having knowledge of the grips and bundles of personal property, according to the testimony of respondents, and having failed, under the circumstances, to take care of same, we cannot say, as a matter of law, that an inference

of willfulness could not be drawn therefrom, and it was a matter for a jury to pass upon.

At the conclusion of the testimony, appellant moved for a directed verdict that there was no testimony of actionable negligence.

Appellant stresses the fact that there are no particular seats sold on a bus, but it does not require even a liberal construction of the complaint to hold that respondents' complaint is as to the failure to furnish them with a seat or accommodation on the original bus on which they began the trip. Appellant introduced in evidence its rules and regulations, in which there is contained the following: "In case of insufficient seating capacity on any schedule, passengers will be placed on motor coach in order of their booking."

When this bus came into Greenville, respondents had seats thereon. While they were out of the bus following the instructions of the driver, others to whom tickets had been sold at Greenville were permitted to fill the bus to its capacity, and respondents were refused the right to re-enter. So, under the rules and regulations of appellant, which were certainly binding on it, respondents were entitled to seats on this bus in preference to those purchasing tickets at Greenville, and it was an invasion of their rights to allow the bus to be filled with passengers to the exclusion of respondents.

It is elementary that when a person is received as a passenger by a common carrier, it is the duty of the common carrier to give the passenger safe and comfortable transportation to his destination, and the degree of care which the common carrier is required to exercise in performing this duty is the highest degree of care.

It is not claimed by appellant that the respondent P. O. Payne, Jr., on account of being sick, had became a nuisance to the other passengers, and that he and the other respondents were not allowed to re-enter the bus for that reason, but simply that the bus had been filled with the influx of new passengers, notwithstanding its own rule that passengers

will be placed on motor coach in order of their booking. Appellant knew that on Saturdays the travel was exceedingly heavy, and that it was going to be necessary to run an extra bus for at least a portion of the way for the reason that the regular bus could not accommodate all of the passengers, yet with this knowledge on the part of appellant's agents, it allowed the bus to fill with new passengers and took the position that so long as it furnished or offered transportation on another bus to respondents it had discharged its contract.

The testimony in the case was sufficient to require the trial Judge to submit to the jury the question of willfulness —whether there was such indifference exhibited to the rights of respondents as to amount to willfulness—whether there was such gross negligence, under all of the circumstances, as to amount to a reckless disregard of their rights—a reckless invasion of their rights.

In the case of *Christian v. Augusta Ry. Co.,* 87 S. C., 123, 69 S. E., 17, 18, Ann. Cas., 1912-B, 995, it was held that evidence tending to show a passenger standing at the station of an electric car motioned it to stop, but it ran 75 yards beyond and then stopped for 1½ minutes, and defendant's servants invited the passenger to come and board the car, but refusing to return to the station, warranted a verdict for punitive damages. In this respect the Court said:

"The fact that the car was stopped to allow the plaintiff to get on tends very strongly to negative the charge that the motorman saw the signal and willfully disregarded it; and it would be difficult to support the judgment for punitive damages on that ground. There is no doubt, however, that the defendant had itself fixed a station at which it required all persons wishing to take the cars to stand, and that in this instance its agents intentionally refused to back the car 75 yards to enable the plaintiff to get on there. It is true that the Courts must look at such matters reasonably, and that they will not do the absurd thing of requiring cars to stop

at an exact spot, when no inconvenience or hardship is inflicted on the person intending to enter the car. How much variation from exactness in this respect is allowable without a violation of duty depends on circumstances, and is usually an issue of fact, to be determined by the jury or by the tribunal on which the law imposes the power and duty to decide the facts. In this case the judgment of the Circuit Court must be regarded as an adjudication that stopping 75 yards beyond the station was not a substantial compliance with the duty of the defendant to stop at its station, and that the defendant's agent had no right to require the plaintiff to go that distance to reach the car.

"In view of the comparative ease with which electric cars may be moved and controlled, it cannot be said that there was no support in the evidence for the finding of the Court that the defendant's agents in refusing to bring the car back to the station willfully violated the right of the plaintiff to board the car at the station.

"The case does not fall within the reasoning and the principles on which either the cases of *Trapp v. Southern Ry.*, 72 S. C., 343, 51 S. E., 919, or *Ussery v. Augusta-Aiken Ry.*, 79 S. C., 209, 60 S. E., 527, was decided."

Appellant's Exception 11 is as follows: "That his Honor erred in charging plaintiff's first request as follows: 'If the jury finds that the plaintiff purchased transportation on defendant's bus line, was given seat thereon and transported to Greenville, S. C., and if he was instructed that his baggage and seat would be preserved for him while a stop was made and if the defendant company engaged and sold to other passengers transportation on bus occupied by the plaintiff and allowed them to take the seat and accommodations sold, enjoyed, and occupied by the plaintiff, and refused plaintiff transportation thereon, it is no defense to his cause of action that the company furnished other means of travel or some other mode of conveyance. * * * I charge you that.' "

Was this a charge on the facts? Under the case of *Weaver v. Southern Railway,* 76 S. C., 49, 56 S. E., 657, 121 Am. St. Rep., 934, having singled out the contention of respondents, it was a charge on the facts, but these facts were undisputed, except "that his baggage and seat would be preserved for him while a stop was made." It was unnecessary, under the testimony in this case, for appellant to instruct respondents that a seat would be preserved for them—they were entitled, under the rules of the appellant, to this, and even if appellant did not actually know that respondents had baggage, the natural presumption is they would have, and when they, along with the other passengers, were invited to leave the bus during the 20- or 25-minute stop in order for it to be mopped and cleaned, and were not instructed to also remove any baggage they had, they had the right to assume that their baggage would be cared for and protected. We, therefore, consider this harmless error.

The other exceptions alleging error in the charge of the trial Judge have been considered and are overruled.

Exception 20 alleges error in refusing a new trial as to punitive damages, and Exception 22 alleges error in not granting a new trial *nisi* upon the ground that the allowance of punitive damages by the jury was excessive.

We have hereinbefore called attention to the fact that the record does not show that any portion of the verdict was for punitive damages. This information came to us through the printed and oral arguments of counsel. Therefore, in considering the exceptions throughout the case directed to punitive damages, it has been done as a matter of grace.

What has been hereinbefore said disposes of Exception 20, and as to Excetion 22, we cannot say that the punitive damages awarded ($300.00 in each case, as shown by the briefs of counsel) were so excessive, that we can hold as a matter of law that the presiding Judge committed an abuse of discretion in failing to reduce the amount thereof.

All exceptions have been considered and are overruled. Affirmed.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.