16110

ROBINSON v. DUKE POWER CO. *ET AL.*
(48 S. E. (2d) 808)

*Messrs. S. R. Watt,* and *Daniel & Russell,* of Spartanburg, for Appellant,

*Messrs. J. C. Mooneyham* and *Johnson, Johnson & Foster,* all of Spartanburg, for Respondent,

July 22, 1948.

STUKES, J.: Respondent is an old employee of the Southern Railway and works at their shops a few miles from Spartanburg on the Asheville highway. In accord with his custom of many years he boarded a passenger bus of Duke Power Company at the shops at a little after four o'clock on the afternoon of July 25, 1946, to return to his home in the city. He sat on the back seat in conformity with the requirement that colored persons occupy the rear seats. The bus proceeded towards Spartanburg and after a little distance pulled toward the right of the road and slowed to pick up a prospective passenger who stood on the right edge of the paved shoulder of the road. Before coming to a complete stop it was struck at the left rear by a large loaded truck, whereby respondent received a serious head wound and was taken to a hospital. He was dismissed after treatment but remained under the care of his physician for some time and he testified to apparently permanent impairment of his vision. He missed over a month from work and thereby lost in excess of $200.00 in wages.

The action for damages is against the Power Company, which was the owner and operator of the bus, and against the owner of the truck and the truck itself. All defended upon general denials and verdict was rendered against all in the amount of $600.00 actual and punitive damages. Only the Power Company appealed.

The complaint alleged negligence, wilfulness and wantonness on the part of all of the defendants, with separate specifications against the Power Company, as follows: (a) Failure of proper signal of the intended stop; (b) failure to have the rear signal lights of the bus clean so that their signal could be seen by the driver of a vehicle approaching from the rear; (c) in stopping the bus on the road in violation of law; and (d) failure to have the rear window of the bus clean so that the driver could observe approaching vehicles.

The trial was remarkable in that neither the driver of the bus nor the driver of the truck testified. This raises the inference as to appellant that the testimony of its bus driver, if submitted, would have been unfavorable to it. The record contains no hint of explanation of his absence. *Danner v. S. C. Railroad Co.,* 4 Rich. 329, 55 Am. Dec. 678; *Murray v. S. C. Railroad Co.,* 10 Rich. 227, 70 Am. Dec. 219; *Ex parte Hernlen,* 156 S. C. 181, 153 S. E. 133, 69 A. L. R. 443; *Wingate v. Postal Telegraph & Cable Co.,* 204 S. C. 520, 30 S. E. (2d) 307; *Gaskins v. Firemans Ins. Co.,* 206 S. C. 213, 33 S. E. (2d) 498. 20 Am. Jur. 192, Evidence, Sec. 187.

State Highway Patrolman Dorman was called to the scene of the accident, examined the vehicles and made certain measurements, to all of which he testified in behalf of respondent. He arrived at about five o'clock and found the vehicles in the position in which they were left after the collision; they were about twenty or twenty-five feet apart. The left rear of the bus and the right front of the truck bore unmistakable marks of the collision. The left rear glass window of the bus was broken. The right rear dual wheels of the bus were three and a half feet from the right edge of the shoulder, which means that they were about three and a half feet off the main or center paved portion of the highway. This paved portion was twenty feet wide and the hard surfaced shoulder at this point was six and one-half feet wide. The rear bus wheels had left skid-marks two feet, four inches long and the truck and trailer wheels had made similar marks on the pavement twenty and one-half feet in length, and those on the left-hand side were eight feet from the edge of the paved shoulder which placed the rear of that vehicle about one and a half feet within the right edge of the main paved portion. These measurements show that the bus was not quite as far to the right of the pavement as it might have been, although some of the witnesses testified that it was.

Besides the appellant's pictures of the scene and the vehicles, made just after the accident and when the patrolman was present, the latter's testimony is the only direct evidence in the record which supports respondent's allegations of negligence, etc. He testified that the exterior rear vision mirror of the bus was broken and that the rear glasses, quoting, "were somewhat dirty and the stop lights covered with a slight amount of dust," and, continuing, "I had the brakes applied in order to make the stop lights work and I measured off one hundred feet back and they were barely visible" from that point. On cross-examination this witness was even more damaging to appellant. In categorical answers to counsel's questions he testified that he boarded the bus and sat in the driver's seat and tried unsuccessfully to see through the rear glasses of the bus; that the latter were so obscured by mud or dirt that he could not see the truck sitting still close behind the bus, as it then was; and he repeated that at a distance of one hundred feet behind the bus he could not see the stop lights on its rear because they were covered with dust and dirt, as were the rear glasses (windows) of the bus.

Appellant contends first (including the second question presented) that there was error in the refusal of its successive motions for non-suit and directed verdict for lack of evidence of any actionable negligence of appellant which proximately caused or contributed to plaintiff's injury. The argument overlooks the testimony, which has been recounted, of the serious defects in the condition of the bus. Granting the apparent reckless conduct of the driver of the truck, it was reasonable for the jury to conclude that had the driver of the bus been cognizant of the dangerous approach of the truck at his rear, he would have driven the bus to the extreme right of the road or continued ahead at a sufficient speed to keep out of the way of the truck until it passed. His means of this knowledge consisted of the exterior rear vision mirror (which was broken according to the evidence) and his view of the approaching

truck in the interior mirror, and the latter was impossible because of the unkempt condition of the rear glasses or windows of the bus. Morecover, the efficiency of his stop or brake lights at the rear were greatly impaired because of their dirty condition, according to the testimony of the patrolman. This brief discussion of the pertinent testimony is convincing that these questions were properly submitted to the jury for their determination.

Appellant is a common carrier and respondent was a fare-paying passenger which brings into play the well-settled rule of law that appellant in such case should be held to the highest degree of care for the safety of passengers consistent with practical operation. The following is quoted from the opinion in the recent case of *Humphries v. Stokes Bus Service,* 199 S. C. 132, 18 S. E. (2d) 675, 676: "It is now established that the owner of a bus is considered a common carrier of passengers, and as such owes a duty to the passengers to exercise the highest degree of care for their safety that is consistent with the practical operation and conduct of its business so long as the relationship of passenger and carrier exists; and a failure to do so is negligence. *Poliakoff v. Shelton,* 193 S. C. 398, 8 S. E. (2d) 494; *Eaddy v. Greensboro-Fayetteville Bus Lines,* 191 S. C. 538, 5 S. E. (2d) 281; *Payne v. Atlantic Greyhound Bus Lines,* 182 S. C. 58, 188 S. E. 426; Annotation, 96 A. L. R. 727; 37 Am. Jur. Sec. 144, page 594." Subsequent cases of like tenor are: *Thomas v. Atlantic Greyhound Corp.,* 204 S. C. 247, 29 S. E. (2d) 196; *Squires v. Henderson,* 208 S. C. 58, 36 S. E. (2d) 738, and *Lentz v. Carolina Scenic Coach Lines,* 208 S. C. 278, 38 S. E. (2d) 11. Also helpful from the *Thomas case,* 204 S. C., at page 252, 29 S. E. (2d) at page 198, is the following: "Where a motion is made for a directed verdict, the testimony and all reasonable inferences deducible therefrom are to be considered in a light most favorable to the party against whom the motion is made. It is not the province of the Court to

weigh the testimony, but simply to determine if there is any relevant, competent testimony adduced from which a reasonable inference may be drawn, tending to establish the material elements in the plaintiff's cause of action."

Reliance is largely had by appellant upon *Locklear v. Southeastern Stages, Inc.*, 193 S. C. 309, 8 S. E (2d) 321. It is a valuable authority for its clear reasoning and its wealth of citations of former decisions. But this case does not come within the rule of it. There a bus had stopped, partly off the paved highway, to take on passengers. The latter were struck while in the act of boarding the bus by a recklessly driven automobile which undertook to unlawfully pass with undiminished speed on the right of the stationary bus. It was held, as a matter of law, that this outrageous act of negligence need not have been foreseen by the driver of the bus whose manner of parking, if negligent, was not the proximate cause of the accident. The facts of the present case are quite different. The jury may have reasonably decided that the bus driver in this case should have ascertained before slowing to a stop, even on his far right of the highway, that there was no approaching vehicle in dangerous proximity behind, and for that purpose his rear vision mirrors and back glasses were needed in good order. It is common knowledge that it is not unforeseeable that a slow-moving vehicle in present-day highway traffic is subject to the danger of being struck at the rear by a faster moving vehicle, and here was a large passenger bus. A further distinction of controlling importance between this case and that of Locklear is that here involved is the rule of the high degree of care required on the part of carrier for passenger, to which reference has been made. The principle was not discussed, apparently not raised, in the *Locklear case*. The latter decision was reviewed and differentiated in *Ayers v. Atlantic Greyhound Corporation*, 208 S. C. 267, 37 S. E. (2d) 737.

The case in hand cannot be rightly decided by comparison of the extent or degree of negligence of appellant and its bus driver and that of the truck driver, as disclosed by the evidence. The principle applicable is expressed in the latter portion of the following quotation from 37 Am. Jur. 594, Motor Transportation, Sec. 144: "It is now established beyond controversy that the owner of a jitney bus or automobile stage is considered a common carrier of passengers, and, as such owes a duty to the passengers to exercise the highest degree of care for their safety that is consistent with the conduct of its business, so long as the relationship of passenger and carrier exists; and if he is guilty of the slightest negligence whereby a passenger is injured, without negligence on the latter's part, he will be liable for such injury. It has been held that this duty is not met, as a matter of law, by the mere observance of the laws of the road, but that the negligence of the operator, if any, as between him and his passenger, is to be measured by his duty as a common carrier, and not by his duty to other users of the highway."

It is said in 10 Am. Jur. 162, Carriers, Sec. 1242, with numerous decisions from other jurisdictions cited in the footnotes, as follows: "A carrier that fails in its duty to a passenger is responsible for the consequences of its negligence irrespective of the fact that the negligence of a third party contributed to the injury. Although such third party acted entirely independently of the carrier, the carrier is as much under a duty to guard against the results of the acts of third persons as of any other cause, the operation or intervention of which it can reasonably anticipate." The issue of proximate cause of the injury to plaintiff in this case was for solution by the jury.

A case of considerable similarity, but of more complication, is *Perry v. Sykes et al.*, 1939, 215 N. C. 39, 200 S. E. 923. The opinion of the court is interesting for its content of something of the origin in the English common law of

the unusual degree of care which a carrier owes his passenger, with a quotation from an early opinion of Lord Mansfield. In the North Carolina case plaintiff was a passenger in a taxicab being driven on an express street in the City of Winston-Salem. As he entered an intersection the cab driver saw an automobile driven by Sykes enter the intersection from the cross street in disregard of the safety or stop sign and it was about to collide with another car in the intersection. The only alleged negligence of the cab driver was his speed and the fact that he did not alter his course and turn into the side street. The driver testified that he did not attempt to so turn away from his course because he did not think that the collision between the other two cars, which he saw was imminent, would be so severe as to drive one of the colliding cars into his taxicab, which however did happen, and plaintiff's injury resulted. Plaintiff recovered verdict and judgment in the trial court which was reversed for error in the instructions to the jury, but the case was remanded for retrial against the carrier. The stated facts indicate a less strong case for plaintiff than this.

The exceptions relating to the refusal of the trial court to non-suit plaintiff or to direct verdict for appellant are overruled.

The fourth exception (appellant's third question) is next to be considered. The patrolman testified that he arrived at the scene before the vehicles had been moved, to which appellant's counsel objected. The court ruled that the witness could testify as to the marks on the highway and the witness proceeded to follow that suggestion, but promptly ran into further objection which arose in the following stated manner. He said that he found skid-marks which were made by the wheels of the bus, quoting, "leading from the point of impact up to where the bus—" whereupon objecting counsel interrupted with the assertion that the witness could only know the location of the point of impact by having seen the collision. This the court overruled. On cross-examination ex-

amining counsel pursued the question and the witness explained that he determined the location of the point of impact by the broken glass and skid-marks on the pavement, saying: "Because glass and stuff was on the pavement and it will not move", and further that the skid-marks of the bus began at the point of impact.

Appellant introduced in evidence several excellent photographs, some of which appear to have been taken before the vehicles were moved, and the patrolman himself was included in at least one although he had nothing to do with the taking of them. They corroborate his testimony, particularly as to the skid-marks of the truck and the non-transparency of the rear glass windows of the bus. Only through the hole in the broken window is the interior of the bus visible in the photographs. By the same token one could not see through the glass from within the bus. The record upon the point of this exception has been rather fully reproduced in order to clearly demonstrate that no prejudice resulted to appellant from the incident and the jury could have only understood that the witness fixed the point of impact from the positions of the vehicles and the objects and marks on the pavement, and the members of the jury were no doubt better able to judge of the accuracy of the location than is the court. It may be observed that ordinarily an eye witness of a collision would probably be less accurate in determining the exact point after removal of the vehicles, than would the fixing of the location by the mute evidence on the road.

Appellant's fourth question arises from its objection to the testimony on cross-examination of its witness Blalock. He was also a passenger on the bus sitting in the front and facing to the rear, but he said he did not look, and he did not see, the on-coming truck before the collision. In answer to cross-examining counsel's question the witness said that he did not examine the condition of the rear windows of the bus to see how dirty and muddy they were; further that he

heard the testimony of the patrolman, and then he was asked: "And so far as you know, what he said was true?" Objection was interposed and after some discussion the question was reworded, as follows: "So far as your examination and observation, all Mr. Dorman said .was true?" Before answer and after further elaboration of the objection by counsel, the question was again reworded: "So far as you observed, and you heard his testimony, his statement of the condition of the rear view glass was true?" The admitted answer was: "Yes, I would say it was."

■ This was no general appraisal of the testimony of one witness by another, indeed not even a contradiction. The cited authority of *State v. Harriott,* 210 S. C. 290, 42 S. E. (2d) 385, is therefore entirely inapplicable as is seen by reference to it. An important issue of the trial was the condition of the rear glasses of the bus. Here was a passenger who sat facing them but said he did not examine them (however, he was unaware of the approaching truck which should have been visible through them on the afternoon of a clear day which this was) and the question was finally confined to the condition of the glasses and he was allowed to testify that as far as he saw, the testimony of the patrolman upon this particular point was true. No prejudice is apparent and therefore there is no reversible error.

■ The fifth question made by appellant relates to several portions of the instructions to the jury which are said in the brief to have been objectionable, quoting, "Though not direct charges on the facts, they are argumentative, not warranted by any facts proved, and unduly emphasized the fictitious issues urged by plaintiff's counsel as their theory of the case, and clearly intimate the court's opinion that Duke Power Company should be held". This implies bias and prejudice of the court which are not at all evident upon consideration of the instructions.

Particularly, exception VII imputes error in the instruction that violation of a statute is negligence *per se* and when such violation proximately causes or contributes to an injury, the injured person is entitled to recover. The court charged certain portions of Section 1616 of the Code of 1942, subsections 12, 16 and 17, forbidding one vehicle to follow too closely another on the highway, requiring specified signals upon turning from a direct course, and forbidding sudden stops or decrease of speed without certain signals to the rear by the driver. Appellant contends that there was no evidence that it failed to give a stop signal but overlooks that the stop lights on the rear of the bus, required in the alternative by sub-section 17, *supra,* were, or would have been if attempted to be used, largely ineffective because of the condition of them, according to the testimony of respondent's patrolman-witness. Some of the instructions were applicable only to the other defendants in the action, who have not appealed from the verdict against them, to-wit, the owner of the colliding truck and the truck itself, and these instructions were appropriate because of the issues which the pleadings and evidence made as to them. The instructions were therefore proper and the giving of them indicates no intention of the court to prejudice the rights of appellant and likewise resulted in no unintentional prejudice.

Exception VIII assigns error in the following instruction: "Common carriers for hire owe the highest degree of care to their passengers for safe transportation from one point to another. The degree of care that is required of a common carrier is higher than that which is ordinarily required of an ordinary individual. The law imposes a higher degree of care upon those engaged in the business of transporting the public as common carriers for hire. A presumption of negligence on the part of the carrier arises on proof of injury to a passenger sustained as a result of some agency or instrumentality of the carrier, some act of ommission or

commission of the servants of the carrier, or some defect in the instrumentality of transportation".

The quoted charge was fully warranted by the authorities and was required by the facts in evidence. *Horne v. Southern Railway Company*, 186 S. C. 525, 197 S. E. 31, 116 A. L. R. 745.

Again, it was said later in the rather long charge as follows: "In your consideration of this case, it is necessary to remember that one of the defendants is a common carrier of passengers for hire and is subject to all the rules of law applicable to such common carriers. As such carrier it owes to its passengers the highest degree of care to safely transport and deliver them to their destination. This is the rule which was applied in the earlier times to stage coaches and then to railroads and with the advent of other means of transportation, the rule should be applied with equal force to these new common carriers. The question as to whether punitive damages should be assessed is one which must, of necessity, largely depend on the circumstances of each individual case, the relation of the parties and the duty owed by each. Where one owes the highest degree of care, the failure to exercise reasonable care is a greater breach of duty than where one owes ordinary care".

Exception IX relates to the foregoing portion of the charge in which, however, there was no error. It is practically verbatim from the opinion of this court in *Eaddy v. Greensboro-Fayetteville Bus Lines, Inc.,* 191 S. C. 538, 5 S. E. (2d) 281.

Finally, exception X objects to the charge of the section of the highway code already referred to above, relating to signaling for turns, etc. And again, counsel overlooks the strong evidence of the inefficient maintenance of the observation and signaling devices which were parts of the equipment of appellant's bus. Moreover, it is apparent again that appellant overlooks the fact that it was

one of several defendants and necessarily all of the instructions could not be precisely applicable to each of the defendants and to the conduct of them, respectively, which was indicated by the evidence. If appellant's counsel conceived that the court did not understand the issues under trial, it was incumbent upon them to so direct the attention of the court and not await the verdict to complain and first do so upon appeal, as here. At the conclusion of the instructions the court invited further requests to charge and one of appellant's counsel expressly declined the opportunity. *Blackwell v. Prudential Insurance Co.,* 206 S. C. 320, 34 S. E. (2d) 57.

The issues were properly submitted to the jury and we find no prejudicial error in the court's instructions or in the admission of evidence.

The exceptions are overruled and the judgment affirmed.

BAKER, C.J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.