16509

BROCK v. CAROLINA SCENIC STAGES & CAROLINA CAS. CO.
OF BURLINGTON

(65 S. E. (2d) 468)

*Messrs. Lyles & Lyles,* of Spartanburg, *for Appellant,*

*Messrs. Odom, Bostick & Nolen* and *Sam R. Watt,* of Spartanburg, *for Respondents,*

*Messrs. Lyles & Lyles,* of Spartanburg, *for Appellant, in Reply.*

May 31, 1951.

OXNER, Justice.

This action was brought against Carolina Scenic Stages and its insurer, Carolina Casualty Company of Burlington, North Carolina, to recover damages for the alleged wrongful death of Iris Shirley Brock, a girl twelve years of age, who died instantly as a result of injuries received in a collision between a Chevrolet truck and a bus owned and operated by the Carolina Scenic Stages. The case is here on appeal by the plaintiff from an order of nonsuit and an order refusing

a motion for a new trial. The only question for determination is whether there is any testimony reasonably warranting an inference of actionable negligence in the operation of said bus.

The collision occurred about 8:30 A. M. on August 16, 1949, approximately six miles from the City of Spartanburg, at or near the apex of a twelve to fourteen per cent curve, on a surface treated highway between Boiling Springs and Valley Falls. The surface treated portion of the road was approximately 18 feet wide. There were dirt shoulders. The bus was traveling toward Valley Falls and Spartanburg and was going down a two per cent grade on the inside of the curve. The truck was traveling in the opposite direction. It was foggy and raining and the road was slick. Plaintiff's intestate was riding in the seat of the truck with her father who was also instantly killed as a result of the collision. They were the sole occupants of the truck. Apparently there were no other eyewitnessess except the driver of the bus and the passengers, if any, thereon. Plaintiff sought to establish her case by circumstantial evidence.

Pictures taken shortly after the accident show that the major point of impact was at the left front of each vehicle and indicated a head-on collision. It may be reasonably inferred that either the bus or the truck was being driven to the left of the center of the highway. Of course, it is possible that both were over the center line. The bus was 7 feet 10 inches wide, or approximately one foot less than half the traveled portion of the highway. The width of the truck was 76½ inches. No tracks or skid marks were found on the pavement. The evidence does not disclose the exact point in the curve where the collision occurred. Assuming that the vehicles collided where the debris was found, the bus traveled after the collision approximately 54 feet on the pavement then proceeded diagonally along the left shoulder a distance of 75 feet and came to rest against a cement culvert with both left wheels in the ditch on the truck's side of the road. The movement of the bus along the shoulder was clearly

indicated by the tracks. An examination showed that its left front wheel was badly damaged, though not completely broken down, with the tire thereon deflated. The truck was found in front of the bus lying crosswise on its right side.

A witness who lived about three-tenths of a mile from the scene of the accident testified that while sitting on his front porch he saw the truck passing and waved to the father of the plaintiff's intestate, whom he knew. He said the truck was running from 20 to 25 miles an hour.

The following testimony was given by a nineteen year old boy whose home was located about 150 to 200 feet from the highway:

"Q. Do you recall the day of August 16, 1949? A. Yes, sir.

"Q. When this collision took place out there in front of your house? A. Yes, sir.

"Q. Did you see the Brock truck before it got to the—A. Yes, sir, I saw it about 75 feet before it got to where the bus stopped.

"Q. Let me see if I understand. You saw it about 75 feet before where it stopped —A. Where the wreck stopped it.

"Q. About 75 feet before the wreck happened. That would be about 75 feet towards Valley Falls from the culvert on that side of the road? A. Yes, sir.

"Q. You are estimating that? A. It is about 75 feet.

"Q. Where, James were you when you saw it? A. I had started in the house.

"Q. But where had you been or where were you going? A. I had come from the barn and started into the house.

\* \* \*

"Q. I would like for you to estimate the speed of the truck when you saw it? A. He was doing about 25 miles an hour.

"Q. What side of the road was he on? A. On his right side.

"Q. On his right side. Now then, did you go down to the wreck afterward? A. Yes, sir, I went down after the wreck happened."

The father of the above witness testified:

"Q. How did you happen to go to the scene of this wreck? A. I started to the barn when I heard the crash and ran back there.

"Q. What did you hear? A. I hear noise, escaping air, and then immediately following, a rumbling, crash sound.

"Q. Immediately on hearing that air noise that you spoke of, what did you do? A. I looked towards the road but couldn't see anything and ran down a few steps to my left and saw the bus and little truck about 10 feet before they come to a stop.

"Q. Where was the little truck in relation to the bus when you first saw it? A. In front, being pushed down the road by the bus.

"Q. What did you do then, Mr. Solesbee?

\* \* \*

"A. I ran almost to the road and saw part of the people were apparently dead and ran back to the house and got the truck and went and called an ambulance."

None of the witnesses saw the bus prior to the collision. Accordingly, there is no direct evidence of its speed or the portion of the highway on which it was traveling immediately preceeding the accident. All the debris, with the exception of a brace from the bumper of the truck, was found on the truck's side of the road. An examination of the bus showed that its rear tires were slick and worn to the cord. There was some tread on the front tires, although one witness testified that these were "reasonably slick".

The foregoing constitutes a brief résumé of plaintiff's testimony. The only evidence offered by the defendants consisted of certain photographs. They did not offer the driver of the bus or any other witness. (Of course, defendants' motion should have been for a directed verdict

rather than for a nonsuit. It will be regarded as a motion for a directed verdict, since plaintiff's counsel raises no question as to the character of the motion.)

We think the circumstances heretofore set out, when considered together, are sufficient, *in the absence of any explanation by the defendants,* to warrant an inference that the collision was caused by the bus being driven to the left of the center of the highway. Just before the collision the truck was seen traveling at a moderate rate of speed on the proper side of the road. All the debris, with the exception of one piece of metal, was on the truck's side of the highway. In going around the inside of this curve, there was a natural tendency for the bus, which was almost as wide as half the pavement, to veer to the left. After the collision the bus proceeded some distance along the left shoulder, pushing the truck, and finally came to rest in the ditch on the truck's side of the highway. It must be conceded that reliance on some of this evidence is beset with danger, as so many variables must be considered, and that none of the circumstances mentioned necessarily show that the bus was being operated to the left of the center of the highway at the time of the collision. Yet when taken together and *unexplained,* we think they rise above suspicion and conjecture and reasonably warrant an inference of actionable negligence.

In addition to the foregoing circumstances, the driver of the bus was not offered as a witness from which it may be reasonably inferred that his testimony, if presented, would have been unfavorable to the defendants. *Robinson v. Duke Power Company,* 213 S. C. 185, 48 S. E. (2d) 808, and cases therein cited. The record does not disclose any other surviving witness to the collision. The testimony is silent as to whether there were any passengers on the bus, although the trial Judge stated in his order refusing a new trial that there were passengers. But if so, we do not know what knowledge they had of the collision.

While the difficulty of proof does not relieve plaintiff of the burden of proof, yet in a situation like this, the Court should take a very liberal view of the testimony. It was so held in *Herbert v. H. W. Smith Paper Corporation*, 243 App. Div. 260, 276 N. Y. S. 820, 823, were the Court said: "In their efforts to administer justice, the courts may not approve a rule, in the circumstances shown here, that will permit a defendant whose automobile concededly has injured another, to assume the attitude that he need not explain, if he can, the injury inflicted, merely because no witness was present at the instant of the collision and the victim is dead. It has long been recognized by the courts of this state that in circumstances such as these only slight evidence is required to shift to the defendant the burden of explanation."

We do not think the views herein expressed impinge in any manner upon the decisions of this Court in *Leek v. New South Express Lines*, 192 S. C. 527, 7 S. E. (2d) 459. In that case there were tracks clearly indicating that the truck operated by the defendant never crossed the center of the road. Each vehicle involved in the collision came to a stop on its right side of the road. A full explanation of the circumstances, disclosing the exercise of due care, was given by the driver of the defendant's truck.

We intimate no opinion as to the propriety of a directed verdict in favor of the defendants after the Court has the benefit of the testimony of the driver of the bus or any other witnesses that may be offered by the defendants. Of course, it is impossible to anticipate the character of the testimony that may be offered on another trial of the case. We only now hold that the circumstances are sufficient to require an explanation by the defendants.

The orders appealed from are reversed and the case is remanded for a new trial.

FISHBURNE and STUKES, JJ., concur.

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice, dissenting.

This action was commenced on October 7, 1949, under Lord Campbell's Act for the recovery of Fifty Thousand ($50,000.00) Dollars actual damages for the wrongful death of appellant's intestate, Iris Shirley Brock, a girl twelve years of age, against the respondents, Five Thousand ($5,-000.00) Dollars of which is sought against the surety respondent, Carolina Casualty Company of Burlington, N. C. Upon a trial of the case in the Court below, and at the conclusion of appellant's testimony, the respondents made a motion for a nonsuit of the appellant's action, which motion was granted. Appellant thereupon noted a motion for a new trial, which motion was at a later date argued, and resulted in an order refusing the same. This appeal followed.

During the cross-examination of appellant's witnesses, the respondents placed in evidence four exhibits consisting of photographs of the road at the point of the collision, and a photograph of the front end of the bus. Therefore, if the respondents did not care to offer further testimony, the proper motion would have been for a direction of verdict. However, their motion for nonsuit was the equivalent, and the appellent raises no issue thereabout.

This case arose out of a collision between a light Chevrolet truck, in which appellant's intestate was riding with her father, who was also killed, and a bus of the respondent, Carolina Scenic Stages. The collision occurred on a highway locally known as the Valley Falls-Boiling Springs road, which was a surface treated road about eighteen feet wide, and was commonly known as a "black top" road. The bus was travelling towards Valley Falls and Spartanburg in a southwesterly direction, and the truck was travelling in a northeasterly direction towards Boiling Springs. At the time of the collision (about 8:15 to 8:30 on the morning of August 16, 1949) it was raining, was foggy and the road was slick. The collision occurred at or near the apex of a curve to the right of the road in the direction of Valley Falls. There was a two to two and one-half per cent grade on the curve,

it was a twelve to fourteen per cent curve, which is a safe curve under normal conditions and within the limits of the highway program, and was eight-tenths of a foot higher on the outside of the curve than it was on the inside. The shoulder on the right of the road in the direction of Valley Falls at the beginning of the curve was six feet wide and gradually narrowed to a little less than four feet at the center, and then got back into six feet. On the outer edge of the curve (in the direction of Boiling Springs and the direction in which the truck was travelling), the shoulder started off around six feet wide and got wider, and as it went around the curve it was about eight feet, and gradually increased in width to ten or eleven feet. The bus was traveling down grade. Each of the vhicles was damaged on its left side, taking the direction in which each was going. The weight of the bus (exclusive of its passenger load) was 10,-300 lbs., the precise weight of the truck is not shown by the record, but it is described in the record as a light truck.

The exceptions of the appellant raise the single issue: Is there any evidence from which it can reasonably be inferred that the bus was being negligently operated at the time of the accident, taking into consideration all of the surrounding conditions and circumstances, and that as a result of such negligence, appellant's intestate was killed.

The specifications of negligence in appellant's complaint are:

"(a) In allowing the said bus to be operated by an inexperienced, reckless and incompetent driver.

"(b) In causing the said bus to be driven at a high and unsafe rate of speed and along a narrow winding road around a sharp curve while it was raining and when the vision was obscured by the rain, mist and fog, high embankment and a clump of trees, in utter disregard of the rights of plaintiff's intestate and the safety of those using said highway.

"(c) In causing said bus to veer to its left over and across the center of said road without keeping a watch out for on-

coming traffic when the driver knew or should have known by the exercise of ordinary care that such carelessness and negligence would cause damage to plaintiff's intestate and others traveling on said highway.

"(d) In causing said bus to veer to its left center of the road and strike the Chevrolet truck in which plaintiff's intestate was riding with great force, driving the said truck back some one hundred feet or more, turning it over and killing this plaintiff's intestate.

"(e) In failing to equip the bus with good safe brakes, and tires, and proper working windshield wiper; that the tires were old, worn and slick which made them unsafe because of their failure to grip the road on a damp, wet, foggy and misty morning when its agents, servants and employees knew or should have know that such failure endangered the life of this plaintiff's intestate and others traveling the public highway.

"(f) In failing to use the highway from Boiling Springs across to Highway No. 176 near Dodd's Hill which had been designated as the detour during the construction of Highway No. 9.

"(g) In failing to keep the bus under proper control so as to stop within a safe distance as provided by law."

In the concluding paragraph of appellant's printed brief under the designation, "Summary" there are recited nine particulars as to which presumably appellant contends that there was some proof, and that a reasonable inference of negligence on the part of the respondents could be drawn from the testimony thereabout. We set forth these particulars.

"(a) The morning of August 16, 1949, the date of the collision, was rainy and foggy and vision partially obscured.

"(b) The truck in which intestate was riding was in good condition, having been completely re-worked about three months before the wreck and two new tires put on the back wheels.

"(c) The road on which the vehicles were travelling was what is known as a "black top" road was slick and slippery.

"(d) The road had a twelve to fourteen per cent. curve where the collision took place (as shown by the debris in the road) ; the road was down grade in the direction the bus was travelling and up grade in the direction the truck was traveling; the pull of the truck was to the outer edge of the curve, that is—going in the direction of Boiling Springs.

"(e) All the debris, with the exception of one piece of metal, was on the side of the road or to the right of the center in the direction the truck was going; that one piece of metal was a steel brace from a bumper.

"(f) The bus reached the shoulder of the road on its left-hand side and rolled on that side until it struck a culvert 3.7 feet deep where it rested with the wheels on its left side in the ditch.

"(g) Most of the tires of the bus were slick and some of them worn to the fabric.

"(h) The truck was pushed by the bus on its (the bus') left-hand side of the road to the point where it rested; the tracks of the bus on the left shoulder of the road in the direction in which it was going showed that it (the bus) ran about 75 feet on the shoulder before coming to a final rest.

"(i) The truck in which intestate was riding was going on its right-hand side, proceeding twenty to twenty-five miles an hour, when seen about 75 feet from where both vehicles came to a stop."

We assume that the appellant abandoned her specification (a) of negligence in which it is alleged that the bus was being operated by an inexperienced, reckless and incompetent driver, there being no testimony offered to this effect. And for the establishment of the other alleged specifications of negligence, the appellant relied wholly upon circumstantial evidence, which she had the right to do, if so advised. But she must also take the consequences if the testimony adduced is such that a reasonable inference of negligence on

the part of the alleged tort-feasor cannot be drawn therefrom.

In addition to the facts hereinbefore related, we now briefly set forth the testimony upon which the appellant relies to prove that her intestate's death was caused by the negligence of the respondents in one or more of the particulars alleged.

The motor vehicles, that is, the truck and bus, met on a curve of the road above described, the left front end of the respective vehicles being bashed in by the impact from the collision between them, and the left front wheel of the bus was badly damaged, though not completely broken down, and the tire thereon deflated. Following the collision, the bus proceeded down the road but gradually bearing to the left of the highway and pushing in front thereof the truck until after the bus was entirely off of the paved portion of the road and on the shoulder to the left of the road in the direction in which the bus was being driven. When the vehicles stopped moving, the bus was entirely off the highway with two of its left wheels in the ditch along side the shoulder to the road, and the front of the bus against a culvert which ran under a side road; and the truck was turned over about the middle of the main road opposite the front portion of the bus.

There was some debris found on the traveled side of the road which the truck should have been on, and opposite thereto on the right shoulder of the road in the direction in which the bus was travelling, there was found a piece of a bumper brace. Of the several pieces of scrap metal, the debris on the left side of the road going towards Valley Falls, it "looked like part might have been the transmission out of the little truck, grill, gears and things scattered along the road." A witness who was standing near the highway in the yard to his home saw the truck as it was passing, and if the collision occurred at about where the debris was found in the road, then within approximately 204 feet of

where it is assumed that it came in collision with the bus. This witness testified that at the time he saw the truck it was then travelling on its right side of the road at about 25 miles per hour. (Of course from the point where this witness observed the truck, he could not accurately judge if it was entirely to the right of the center of the road even if he had been trying to ascertain if all portions of the truck were to the right of the center.)

Another witness, the father of the witness who saw the truck on the road just prior to the collision, and whose home is about 150 or 200 feet from the road, testified in part, and we now quote:

"Q. How did you happen to go to the scene of this wreck? A. I started out to the barn when I heard the crash and ran back out there.

"Q. What did you hear? A. I hear noise, escaping air, and then immediately following, a rumbling, crash sound.

"Q. Immediately on hearing that air noise that you spoke of, what did you do?

A. I looked towards the road but couldn't see anything and ran down a few steps to my left and saw the bus and little truck about 10 feet before they come to a stop.

"Q. Where was the little truck in relation to the bus when you first saw it? A. In front, being pushed down the road by the bus.

"Q. What did you do then, Mr. Solesbee?

\* \* \*

"A. I ran almost to the road and saw part of the people were apparently dead and ran back to the house and got the truck and went and called an ambulance."

There were no skid tire marks on the pavement or hard surfaced portion of the road, and the debris above referred to is the only indication of the point where the vehicles were in collision. From that point to where the left wheels of the bus showed entry upon the left shoulder of the road it was 54 feet, and from that point to where it stopped against

the culvert was 75 feet. There is no testimony concerning the speed of the bus, nor is there any testimony as to whether the truck or the bus was at the time of the collision over the center of the middle of the road in their respective directions. Of course one or the other had to be over the center line, or possibly both were over, but it is pure conjecture to say that the bus was over the center line just as it would be to say that the truck was over.

The tires on the bus were badly worn, especially the rear tires, the front tires being in fair condition. However, the photograph of the front left tire which was deflated in the collision shows a very good tread. The tire on the right front wheel is not shown in the picture. It may also be noted that the witness who examined the tires on the bus for the purpose of testifying as to their condition admitted that he did not even notice that the front left wheel was badly bent or broken down, although this condition was most obvious to the casual observer.

The truck in which appellant's intestate was riding was in good condition and was equipped with good tires, two of them being practically new.

The curve in the road was not a dangerous one, and vehicles approaching from either direction could be, with the slightest care, observed for a distance ample to avoid collisions.

There is nothing in the record which would indicate that the driver of the bus was not available to the appellant as a witness, and surely he was an eye witness to what caused the collision. Again, there is no showing that no passenger on the bus could enlighten the Court as to the cause of the collision, or that such passenger or passengers were not available. The appellant apparently elected to rest her case on the circumstances hereinbefore related, and this of course she had a right to do, but will be bound by such action on her part.

The question before the Court is: Did the testimony on behalf of the appellant require the submission of the case to the jury?

In passing upon this question we will keep in mind the established law that in passing upon motions for nonsuit, and direction of verdict in favor of an alleged tort-feasor, the testimony and all reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the plaintiff. As was stated by Mr. Justice Oxner in writing the opinion of the Court in *Moody v. Dillon Co.*, 210 S. C. 458, 43 S. E. (2d) 201, 203, and quoting from *Shields v. Chevrolet Truck et al.*, 195 S. C. 437, 12 S. E. (2d) 19, 23, "In determining whether the Court below erred in overruling appellant's motions for a nonsuit and a directed verdict, the testimony and all reasonable inferences to be drawn therefrom must be viewed in the light most favorable to respondent. 'Negligence is the "want of due care", and is generally a mixed question of law and fact. In determining if negligence is inferable, all of the surrounding conditions and circumstances must be taken into consideration, and if a reasonable inference can be drawn from all of the facts and circumstances and conditions prevailing at the time of the alleged negligence that one charged therewith did not observe ordinary care, then it becomes a question for the jury to pass upon.' "

It is the established law in this State that no inference of negligence on the part of an alleged tort-feasor arises from the mere fact of an accident or injury.

The appellant cites and relies to a large extent for her position in this case on the case of *Eickhoff v. Beard-Laney, Inc.*, 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010, but the facts of that case easily differentiates it from the one under consideration. In that case, the plaintiff was an occupant of her husband's automobile which was being operated by him to the right of the center of a paved highway, in the early afternoon of a clear day, when it was struck without

warning from behind by a gasoline truck of the defendant, travelling in the same direction. The automobile was being driven at about twenty-five to thirty miles per hour, due to motor trouble, and had been limited to this speed for some considerable time prior to the accident. The collision was of such force that the automobile was thrown from the point of contact one hundred and twelve feet into an adjacent field where it knocked down one fence post of unusually large size and came to rest up and astride another. The truck and trailer went to the left after the impact about the same distance and landed in a nearby ditch. The complaint alleged many specifications of negligence, the opinion specifically mentioning excessive speed, failure to keep a proper lookout, lack of control, failure to turn to the left in order to avoid the collision and insufficient brakes. It was obvious from the circumstances that the servant of the owner of the truck (the driver thereof) was negligent in the particulars stated. A reading of the case will disclose that no brakes were applied until the instant of the collision, and therefore the distance traveled by the truck after the collision was not considered as evidence of insufficient brakes.

It may be emphasized at this point that the respondents are not here contending that negligence cannot be shown by circumstantial evidence alone, but it is their position that the facts and circumstances testified to upon the trial of the case are not sufficient to raise a reasonable inference of negligence on their part, and that a finding of negligence therefrom would necessarily be based on conjecture and speculation. In the light of the stated position and contention of the respondents, and of the governing law hereinbefore set forth, we do not find it necessary to refer to the other citations of authority by the appellant.

Of the cases cited, or which we have been able to find, *Leek v. New South Express Lines,* 192 S. C. 527, 7 S. E. (2d) 459, 462, is the most apposite to the case under discussion. On a foggy morning in February, 1938, a heavily loaded truck of the defendant and an automobile operated

by the plaintiff's intestate collided on U. S. Highway No. 1 in Lexington County. The vehicles were travelling in opposite directions. The car of the deceased was driven and occupied by him alone. The truck was operated by defendant's agent and servant, who was also alone. An action for the recovery of damages was brought against the defendant by the administrator of the estate of the deceased, under Lord Campbell's Act. While there were several specifications of negligence, the case was tried upon the allegation and theory that the truck was being driven to its left of the center line of the highway and into the automobile occupied by the decedent. The trial resulted in a verdict for the plaintiff for actual damages. The case was appealed to this Court on the grounds that the trial Court erred in refusing to grant defendant's motions for nonsuit, and for direction of verdict in favor of the defendant for that there was a total failure of evidence tending to show actionable negligence on the part of the defendant. The truck driver was the only surviving eyewitness to the accident, and, as stated in the opinion of this Court, for the proof of his case, the plaintiff was necessarily confined to circumstantial evidence.

A witness for plaintiff (J. T. Miller) testified that on the morning of the accident he was driving his car en route to Columbia; that he turned into the highway shortly before 6:30 o'clock (the weather being cold and foggy), and saw the tail light of another car, which it later developed was the car driven by the deceased, also headed towards Columbia; that both cars were travelling at about 30 miles per hour, and that throughout the six miles he followed this car, and until he lost sight of it a few seconds before it collided with defendant's truck, its tail light showed it to be on the right of the center of the road; that just before the place of the accident the grade of the road rises over a low hill, and then curved to the left in the direction in which the decedent's car was travelling; that he lost sight of the tail light of the car when it passed over the crest of the hill and entered upon the curve; that he did not see it again until

after it had collided with defendant's truck at a point about one hundred yards beyond the hill; that he was close enough. to hear the crash of the collision, and as he came within about seventy-five yards of where the vehicles came together, the defendant's truck moving slowly and apparently about to stop, met and passed him; that when he reached the scene of the accident a few seconds thereafter, he found the car of the decedent upright on its extreme right-hand side of the highway, practically in the ditch, with its left front wheel still on the paved portion of the road; that when the rear light of the car of the deceased disappeared from his view over the brow of the hill, the car was on the right-hand side of the center of the highway.

This testimony was corroborated by another witness (J. H. Miller) who was riding as a passenger in the car following the car of the deceased.

Another witness who resided about 200 yards from the scene of the accident corroborated the other witnesses as to the position of the decedent's car immediately following the accident, and also testified as to the physical condition of the automobile and the truck, and the angle at which they came together as evidenced by the damages thereto. He testified that the glass from the left-hand window by the driver's seat had been broken out of the automobile, that the glass had been broken from the window on the left-hand side by the driver's seat on the truck, and that the rear view mirror on that side was broken and pressed back. He further testified that while fragments of glass were scattered all over the road, the majority of it was from one and a half to three feet over the center of the highway on the automobile's side of the road. The highway was damp from the fog, and there were no distinguishable marks or tracks of any kind with reference to either vehicle, although he looked for such tracks or marks.

The main force of the blow delivered to the automobile as testified to by this witness and as shown by. photographs, was directed to the middle of the left-hand side by the

driver's seat, partially crushing in the door on that side, and a portion of the top. It was conceded that this portion of the automobile was struck by the left hand front corner of the van which projected beyond the cab of the truck. The left front fender of the truck was dented on its outside edge, and that portion of the fender over the wheel was crushed in.

The testimony for the plaintiff also showed that the decedent's car was travelling on the outside of the curve, and that the truck was travelling upon the inside of the curve. This is the precise situation in which the truck in which appellant's intestate was riding, and the bus were travelling at the time of their collision on a curve.

We quote from the Leek opinion, authored by Mr. Justice Fishburne:

"The right to recover on circumstantial evidence for death resulting from another's negligence depends upon the reasonable and logical connection such proof establishes between the death and the negligent act alleged to have caused it. It is incumbent upon the plaintiff, in the absence of direct evidence, to show the existence of such circumstances as would justify the inference that the injury which caused the death was due to the wrongful act of the defendant, and not leave the question to mere speculation or conjecture. The facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates." (Citing authorities.)

"As we view the evidence, the testimony of J. T. Miller and J. H. Miller, which is pointed to by the respondent as tending to show that the Russell car was on its right of the center of the highway at the instant of collision, has no probative value. They had lost sight of the car for a distance of 100 yards or more before the collision occurred. Therefore all that is left in the plaintiff's case from which to determine that the truck was on its left of the center when the collision occurred, is the evidence concerning the broken glass, and

the fact that the car came to rest on its own side of the highway.

"The plaintiff was bound to show something more than that the defendant was possibly responsible for the decedent's death, in order to entitle him to a verdict. The burden was upon him, in the absence of positive evidence of that fact, to show not only the existence of such possible responsibility, but proof of circumstances which would furnish a reasonable basis for the inference by the jury of the ultimate fact that the death was caused by the wrongful act of the defendant in driving its truck upon the wrong side of the road. And this, in our opinion, he has not done." 192 S. C. 527, 7 S. E. (2d) 462.

As is obvious from the quoted portions of the opinion in the *Leek case,* the judgment for damages against the defendant was reversed on the ground that the plaintiff had failed to produce any evidence from which it could reasonably be inferred that his intestate's death was the result of negligence on the part of the defendant.

We quote with approval from the Order of the learned trial Judge refusing the motion of appellant for a new trial.

"No one of plaintiff's witnesses fixed the point of impact between these two vehicles, although there was testimony as to the location of debris, the major portion of which was on the left-hand side of the highway along which the bus was travelling, there being, however, some debris on the right-hand side of the bus. The bus was proceeding toward Valley Falls, and the truck toward Boiling Springs. The bus travelled after the collision, a distance of more than 100 feet down a grade, finally coming to rest on its left-hand side of the road against a small culvert which afforded passage into the main highway from an intersection road. There was evidence to the effect that the tires on the bus were worn to the extent that they were slick. There was no evidence as to the speed of either vehicle at the point of the collision. The physical evidence showed the major force of the impact of

the vehicles to have been on the left front of each. The left front wheel of the bus was buckled under that vehicle.

"I have given most careful consideration and review of the testimony and to the argument of Counsel, both on the motion for nonsuit and on the motion for a new trial, and I am convinced that the plaintiff has proved no actionable negligence. Even though the road was slick by virtue of the rainfall, there was no evidence whatever that the bus skidded, so as to constitute the slickness of the tires a factor or proximate cause in the bringing about of this tragedy. As a matter of fact, the course which the bus followed after the collision negatives any such theory as skidding, and on the contrary, shows that it proceeded with all wheels in line in a slightly diagonal course, across the highway, which brought it to the point where it stopped. There were no skid marks or other evidences of sliding which one would normally expect if there was skidding and this was true even though several witnesses testified they reached the scene a few moments after the accident. It is a matter of common knowledge that debris from wrecked vehicles may be found indiscriminately and that no reliance can be placed on such as being determinative of the point of impact. As a matter of fact, when two vehicles are in collision the debris from their collision may fall here or there without regard to the actual point of contact."

Even applying "the last clear chance" doctrine, and assuming that the driver of the bus observed that the truck in which appellant's intestate was riding was approaching and had crossed over the center of the highway to the bus' side of the road, it would be mere speculation that the truck was so driven at a time when the bus could have stopped before coming in collision therewith. Nor can we say it was the duty of the heavy bus to go upon a wet dirt shoulder, necessarily soft, in order to avoid a collision, because such action on the part of the driver of the bus would have endangered the lives of the passengers thereon, to whom the respondents were due the highest degree of care.

Following the collision in which the front left wheel of the bus was broken down or badly damaged, and the tire thereon deflated (and, probably the air brakes on the bus rendered useless), it was but natural for the bus to veer to the left and the driver thereof could only use all of his efforts in protecting the passengers. In this, he apparently did an expert job.

The record discloses that the debris found on the truck's side of the road came from the truck. The damage to the front left side of the truck and to the front left side of the bus could just as well be said to have resulted from the truck being over the center of the road in the direction in which it was travelling, and if so, the debris therefrom would still have been on the truck's side of the road.

As stated by the trial Judge in his order refusing a new trial, there is no indication whatsoever that the bus skidded.

The appellant contends that no skid marks were visible by reason of the tread on the rear tires of the bus being worn off, but there were no skid marks visible from the well treaded tires on the truck when it was pushed down the highway, and certainly for a portion of the time when the truck was cross-wise the highway. No reasonable inference can be drawn that the worn condition of the tires on the bus in anywise contributed to the accident.

While we have great sympathy for the child who lost her life, yet to hold that there is any evidence in the record from which a reasonable inference can be drawn that the respondents were in anywise negligent, or that the negligence of the respondents was the proximate cause of the death of appellant's intestate, would necessarily take us into the field of surmise and conjecture.

The orders appealed from should be affirmed.

TAYLOR, J., concurs.