15840

CARSON *ET AL.* v. COLEMAN

(38 S. E. (2d), 147)

*Mr. M. L. Meadors,* of Florence, for appellants,

*Messrs. McEachin & Townsend,* of Florence, for respondent,

May 10, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court.

Alleging that they owned as tenants in common a certain tract of land in Florence County, containing approximately 270 acres, and that A. L. Coleman claimed some interest in the western half of said tract, the validity of which was denied, Edith Poston Carson and Eleida Poston brought this action in November, 1944, for the purpose of determining such adverse claim and quieting the title to said premises. An answer was duly filed by A. L. Coleman in which he claimed that he was the owner of the western half of said tract of land, consisting of approximately 135 acres, and

denied that the plaintiffs had any interest therein. He alleged that the 270-acre tract of land was formerly owned by Bertram C. Poston and his sister, Edith Poston Carson, who made an equal division of same, Mrs. Carson receiving the western half; that thereafter Mrs. Carson sold to him the 135 acres allotted to her for the sum of $750.00 (the testimony, however, shows $740.00); that at the time of the sale he paid to Mrs. Carson the sum of $500.00 on the purchase price, immediately went into possession, and has since continuously remained in possession of said 135-acre tract; that he has from time to time tendered to Mrs. Carson the remainder of the purchase price and demanded a deed for the premises, but she has declined to accept the money, stating that she wished him to retain same until she had further need of it; and that consequently no deed has ever been made. The prayer of the answer is that the Court require Mrs. Carson to execute and deliver to the defendant a fee-simple deed for the land so purchased by him.

Testimony on the issues raised by the pleadings was taken before Honorable L. D. Lide, Judge of the Twelfth Circuit, on July 6, 1945. At this hearing defendant sought to prove by parol the alleged contract set out in his answer. Plaintiffs denied that Mrs. Carson had ever entered into any such contract and further contended that any such parol contract was unenforceable by reason of the Statute of Frauds. Accordingly, plaintiffs' counsel objected to all testimony offered to prove the alleged contract. Thereafter in a well-reasoned decree filed on August 15, 1945, Judge Lide found that defendant had established all the terms of the parol contract set up in his answer by clear and convincing testimony and that there had been a sufficient part performance by the defendant to remove the contract from the operation of the Statute of Frauds. He accordingly directed specific performance of the contract by Mrs. Carson upon payment to her by defendant of the sum of $240.00, the balance found to be due on the purchase price, plus interest on said amount in the sum of $157.80, together with taxes paid on said property for the year 1944. The plaintiffs have appealed from

this decree upon nineteen exceptions, but the questions to be determined are stated in appellants' brief as follows: "1. Was there a contract? 2. Was there such part performance as to prevent the operation of the Statute of Frauds?"

Before a Court of Equity will specifically enforce a parol contract on the ground of part performance, all the material terms of the contract must be established to the satisfaction of the Court by proof that is clear, definite and certain. *Blackwell v. Ryan*, 21 S. C., 112; *Hammassapoulo et al. v. Hammassapoulo et al.*, 134 S. C., 54, 131 S. E., 319; *Finklea v. Carolina Farms Co.*, 196 S. C., 466, 13 S. E. (2d), 596. Equally well settled is the rule that in equity causes the burden is upon the appellants to satisfy this Court that the preponderance of the evidence is against the findings of fact by the Circuit Judge, particularly when the testimony has been taken before him. We shall now approach a consideration of the evidence with these well-established principles in mind.

The 270-acre tract of land described in the complaint was conveyed in 1926 to Bertram C. Poston and Edith Poston (who later married H. G. Carson) by the Master pursuant to a decree of the Court in certain partition proceedings. The judgment roll in those proceedings contains a plat of the 270-acre tract which was made in 1917. Bertram C. Poston died intestate in 1934, leaving as his sole heirs-at-law his sisters, Edith Poston Carson and Eleida Poston, plaintiffs-appellants in this case. Three or four years prior to his death, Bertram C. Poston requested a surveyor to make an equal division of said 270-acre tract. This surveyor ran the division line on the ground and the line was also indicated by him in pencil on the plat above referred to. This plat was introduced in evidence and shows the pencil line as running N. 5 W. and it appears to divide the tract into two equal parcels. This entire tract consists of woods lands without any cleared land and without any buildings of any consequence whatever. According to the testimony of this surveyor, Bertram C. Poston was present when the line was run, but neither Mrs. Carson nor any representative of hers

was present. Although Mrs. Carson testified that she knew nothing about this division until after the death of her brother, Bertram C. Poston, she admitted that she then accepted the division and claimed as her own individual property the western half of the tract which was allotted to her. It is undisputed that the division was equitable in every respect. Judge Lide correctly held "that while this partition was by parol, it has been acquiesced in and recognized by the respective parties for a period of approximately ten years, and * * * should therefore be confirmed by the Court."

Appellants are nieces of respondent's first wife. Respondent lived in Florence County and appellant, Mrs. Carson resided with her husband in Columbia. Respondent and the Carson family were on very friendly terms and visited each other quite frequently. Appellant, Eleida Poston, has resided in California for a number of years. It appears that respondent worked the turpentine rights on the entire tract for approximately twenty years. During a portion of this time he worked for certain lessees of the turpentine rights but for the last seven years the rights were in his name.

The only witnesses who testified in the case, other than the surveyor mentioned, were respondent and appellant, Mrs. Carson. Respondent testified that some time after the 270-acre tract was divided (he was unable to fix the exact year), he entered into a verbal agreement with H. G. Carson, acting for and in behalf of his wife, to purchase the western half of said tract, which had been allotted to Mrs. Carson in the division, for the agreed price of $740.00; that a portion of the purchase price was paid at the time and shortly thereafter other payments were made, the total aggregating $500.00; that thereafter on several occasions he offered to pay the balance of $240.00 but Mrs. Carson declined to accept it, stating that she wished him to keep the money until she needed it for her daughter's education; that immediately after purchasing the property, he discontinued paying Mrs. Carson rent on same and since that time has neither paid nor been asked to pay any rent; that in 1942 he sold some poles from the entire tract and accounted to appellants for

those sold from the eastern half of the original tract, but has never accounted or been asked to account for those sold from the western half; that he has been in exclusive possession of the property purchased for approximately ten years and during this entire period paid the taxes on same except for the year 1944, when Mrs. Carson paid the taxes before he had an opportunity of doing so; and that after the sale he never heard of any claim that appellants owned this property until shortly before this action was brought.

Two cancelled checks, one for $50.00, dated September 25, 1934, and the other for $100.00, dated August 29, 1934, were introduced in evidence. Respondent testified that these were given on the purchase price of the property and that he was unable to find the cancelled checks representing the other payments. Both checks were made payable to H. G. Carson, husband of appellant, Mrs. Carson.

A written statement of the transaction relating to the sale of the poles in 1942 from the eastern half of the original tract was introduced in evidence. This statement shows that after deducting taxes for that year, there was owing by respondent to appellants from the proceeds of the poles sold and the turpentine rents from the eastern half of the original tract a balance of $408.29, half of which was paid to appellant, Eleida Poston, and the other half to appellant, Mrs. Carson. Cancelled checks payable to Mrs. Carson, aggregating $204.14, were introduced in evidence. This transaction shows that the original division between Mrs. Carson and Bertram C. Poston was recognized by all parties concerned, for otherwise Eleida Poston would not have been entitled to one-half of the amount involved.

Mrs. Carson denied that she ever agreed to sell this tract of land to respondent or that she ever authorized her husband to do so, and testified that she knew nothing about any alleged sale of the property by her husband. She admitted, however, that at about the time when respondent claims to have purchased this property, her husband received some money from him, the exact amount being unknown to her, which was applied toward the purchase of certain property

in her name in the City of Columbia. She further admitted that she wrote the following letter to respondent in October, 1944, stating that she did so at the request of her husband:

"Enjoyed seeing you all Sunday and hope you don't feel too much older now. Did Billy's gold fish stand the trip alright?

"We have been planning to come down a week-end to see you about buying the woods land back. I'd like to have it for these three boys of mine. Some day one of them might want a farm and that would do them. We will come down one week-end soon as we can; meanwhile, let me know how much you want for the trade back.

"Come to see us, Love,".

Mrs. Carson also admitted that the "woods land" mentioned in the above letter referred to the 135-acre tract in question. Several days later respondent wrote Mrs. Carson in reply, stating in substance that he thought the timber on the part of the land he had bought was worth as much as that on the part formerly owned by Bertram Poston and that he would accept this amount for the land "less what I am due you". It appears that some time in 1944 appellants sold the timber on the eastern half of the original tract, but the testimony does not disclose the amount received.

Mrs. Carson's husband was not sworn as a witness, although evidently available. Appellants argue that there is no evidence to show that he was authorized to act as agent for his wife. It is undisputed that the money received from respondent by Mr. Carson was used in the purchase of certain property in Columbia for Mrs. Carson. We are in full accord with the following conclusion of Judge Lide on the question of agency: "The evidence is clear that she (Mrs. Carson) got the benefit of these payments; and furthermore, the letter written by her is a definite ratification of the acts of Mr. Carson in her behalf, even if he was not originally authorized to act for her."

It is clear from Mrs. Carson's own letter that the land in question was sold to respondent. While the testimony of respondent is somewhat indefinite as to the time when the sale

was made, he is very positive as to all the material terms of the agreement and the amount paid on the purchase price. If respondent's testimony was untrue, no one was in a better position to contradict it than Mr. Carson who was not offered as a witness by appellants. Judge Lide's conclusions that the parties entered into the parol agreement alleged in the answer, that the price agreed upon for the property was fair and reasonable, that respondent has paid $500.00 on the purchase price, and that immediately after said sale, respondent entered into exclusive possession of the property purchased and has since remained in such possession for a period of approximately ten years, using the land as his own, are fully sustained by the evidence.

The remaining question to be determined is whether there was such part performance of the contract by respondent as to prevent the operation of the Statute of Frauds. It is well settled that even a parol contract for the sale of land may be enforced when there has been such part performance as, under the cases, will take it out of the operation of the statute. We shall now consider the various acts relied on by respondent and determine whether they constitute a sufficient part performance. Mere payment of a part or the whole of the purchase money, without more, is not sufficient to take a parol contract out of the statute. *Humbert v. Brisbane,* 25 S. C., 506; *McMillan v. McMillan,* 77 S. C., 511, 58 S. E., 431. But there are other circumstances in this case to be considered in connection with the payment by respondent of approximately two-thirds of the purchase price and his repeated offers to pay the balance. In pursuance of the contract, respondent immediately assumed full and exclusive possession and has since remained openly and continuously in such possession for a period of approximately ten years, during which time he never made acknowledgment of any interest in Mrs. Carson. It is true that prior to purchasing the property, respondent was a lessee of the turpentine rights, but after the sale the nature of his possession changed. He then ceased paying any turpentine rents on the property and no demand for rent has since been made upon him.

Upon the faith of this contract, he has paid the taxes on the tract of land purchased; he has also cut and sold poles from this property which was done with the knowledge of appel-lants, who prior to the commencement of this action never made any claim to the proceeds of the poles sold or demanded any accounting. We think these circumstances are entirely sufficient to show that respondent's possession after the sale is referable to the new right created by the contract and not to the pre-existing tenancy. *Mims v. Chandler*, 21 S. C., 480; *Martin v. LaBoone*, 116 S. C., 97, 107 S. E., 320. Unquestionably all of the foregoing acts, when considered together, constitute a sufficient part performance to take the case out of the statute. *Watts v. Witt*, 39 S. C., 356, 17 S. E., 822; *Board of Missions For Freedmen of the Presbyterian Church of the U. S. v. Dreher et al.*, 185 S. C., 65, 193 S. E., 189. See exhaustive annotation in 101 A. L. R., beginning on page 923. Appellants suggest and strongly argue that there has not been sufficient part performance because respondent has not in reliance upon the contract made valuable improvements on the property. While this would constitute a strong act of part performance, we do not understand that proof of such is indispensable where, as in this case, there are other acts entirely sufficient to constitute part performance. 49 Am. Jur., page 740.

All exceptions are overruled and the decree appealed from is in all respects affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.