16825

JOHNSON v. WINDHAM *ET AL.*

(80 S. E. (2d) 234)

*Messrs. Samuel Want, Sam Rogol,* and *Leroy M. Want,* of Darlington, *for Appellants,*

*Messrs. James P. Mozingo, III, F. Turner Clayton, Benny R. Greer,* and *John L. Nettles,* of Darlington, *for Respondent,*

January 26, 1954.

BAKER, Chief Justice.

This is an action for specific performance of an alleged written contract for. the sale of a lot on which there was a

residence, situate on Spring Street in the Town of Darlington. It was owned by appellant, E. L. Windham, and his mother who is co-appellant. The latter owned a life estate in the property, and the former the remainder interest.

At the time in question the respondent, R. C. Johnson, owned in fee simple a lot on which there was a residence, located on Syracuse Street in Darlington. Respondent owed on a first mortgage on this property to A. B. Daley approximately $2,037.40, and presumably on a second mortgage thereon to the appellant, E. L. Windham, $2,000.00 or more. Upon the payment to Daley of his mortgage by said Windham, and cancellation of the indebtedness of respondent to the appellant, E. L. Windham, being the consideration therefor, respondent conveyed to said appellant the house and lot on Syracuse Street. It is alleged, and there was testimony to this effect, that this was tied in with the transaction for the purchase of the Spring Street property by respondent; that all took place on the same day.

Prior to the alleged transaction involved in this case, Mrs. Windham (the mother) occupied the Spring Street house, and the respondent lived in the Syracuse Street house, but Mrs. Windham had moved from the Spring Street house, and it was then vacant.

In the respondent's amended complaint, it is alleged that on or about July 11, 1951, the respondent and E. L. Windham (the latter acting for himself and as agent for his mother) entered into an agreement under the terms of which the appellants for a consideration of $7,000.00 "plus interest, to be paid at the rate of fifty dollars ($50.00) per month," and in consideration of the respondent selling to the appellants his house on Syracuse Street for $4,000.00, "Two Thousand Dollars ($2,000.00) of which sum was due and owing to the defendant, E. L. Windham, at the time of sale," contracted to sell to the respondent the house and lot on Spring Street.

It is then alleged that the said agreement was reduced to writing, but that the appellant, E. L. Windham, kept the

instrument in his possession under the pretense of having the same signed by his mother, and under the pretense of recording same, and that he has refused to deliver up the contract or to furnish a copy thereof. It is further alleged that as a result of the alleged contract, the respondent deeded the Syracuse Street house to the appellants and moved to the Spring Street house, and has lived there ever since. Also that the monthly payments required by the contract have been made. (Respondent conveyed the Syracuse Street property to E. L. Windham.)

The relief prayed by the respondent is a decree for specific performance of the alleged agreement in so far as the same relates to the Spring Street property, and for general relief.

In the pleading of the appellants, the material allegations of the complaint relating to the alleged contract are denied. As further defenses the appellants rely upon the Statute of Frauds, and upon the claim that the owner of the life interest in the Spring Street house did not consent to the transaction or authorize any one to act as her agent in relation to the same.

The relief prayed for by the appellants is that "the cloud on their title set up in the amended complaint herein be nullified"; that title be adjudicated to be in the appellants; and for general relief.

By consent the cause was referred to take the testimony, and on the testimony taken and the pleadings, the case then came up for argument before the Circuit Judge who issued a decree adjudicating that a contract was made as alleged by the respondent; and that "upon completion of the payment therefor and compliance with the contract of sale, the plaintiff will be entitled to a deed therefor from the defendants."

The primary questions raised by the appellants are (1) that the respondent has failed to establish that a contract for the sale of the property in question was in fact made and "reduced to writing," and (2) that if such a contract

is deducible from the testimony, the contract is not enforceable because it could not become operative without the signature of Mrs. Windham, the owner of the life interest, or without a showing that the contract was signed by some one authorized by her to sign it on her behalf.

The alleged contract was not produced. It is the claim of the respondent that the contract was drawn in the office of John P. Gardner, Esq., an attorney in Darlington, and after being signed by the respondent and by E. L. Windham, was left with Mr. Gardner to get the signature of Mrs. Windham.

Mr. Gardner was called as a witness for the respondent and was examined at length on the question whether he prepared such a contract or agreement which the respondent sets up. He could not, he said, find any file in his office covering the matter. He however thought that there had been a contract of sale but he "couldn't say definitely." He also said: "Well, talking about agreements, I can't testify to any agreement because I don't remember any." We quote from the record:

"Q. Has he in his dealings with you, has he taken care of transactions involving property for his mother? A. Yes, sir. As a matter of fact he gave his mother this property. He would come to my office to prepare any papers relative to his mother's business but, of course, she always signed it. I remember one instance and that was the contract that you showed me, the only instance that I recall that I could base an answer on. When that thing was signed I remember going out and getting her to sign the paper."

Mr. Gardner's testimony indicates a purpose to be fair to the litigants on both sides; it however also indicates only a vague recollection of the mention of a contract relating to the Spring Street property, and the absence of any recollection at all of the terms or execution of such an instrument. Earlier in his testimony, Mr. Gardner had testified that he had a faint recollection of drawing a contract of sale between the parties to this action, although such faint

recollection "might have been just put" in his mind when "this gentleman (undoubtedly referring to respondent) came in and asked me about it, but we did draw up a contract of sale involving this property." It developed that the last portion of Mr. Gardner's statement referred to a contract for the sale of the property here involved entered into at some time prior to the alleged transaction he was being examined about, between the appellants and Grover C. Smothers, a son-in-law of the respondent, and which contract was of the type and similar to the contract alleged in respondent's complaint. Smothers had surrendered his contract and vacated the premises involved.

Mr. Gardner recalled, when the Smothers contract was exhibited to him, drafting same and that he went to the home of Mrs. Windham to procure her signature thereto, but this was the only time he ever had occasion to go to Mrs. Windham's home to procure her signature to a contract.

As to the admitted failure to obtain the signature of Mrs. Windham, who, as aforesaid owned a life estate in the Spring Street property, to the alleged contract, the testimony includes definite statements made by the respondent that he understood that the signature of Mrs. Windham was necessary, and that Mr. Gardner would see to getting this signature. This Mr. Gardner failed to do, if he was to have done so.

It is clearly disclosed by the testimony that although Mrs. Windham was about seventy-four years old, she looked after her own business. An instance is given above. Another instance in the testimony relates to the sale of certain furniture owned by Mrs. Windham. The sale was made to this same son-in-law of respondent. The latter testified that he dealt with Mr. Windham in the first instance but that Mr. Windham told him to ask Mrs. Windham about it. She approved the sale, so Mr. Windham handled the business.

On the issues above discussed, there was testimony that the $50.00 monthly payments were made to Mr. Windham,

who signed receipts for the same "Nettie V. Windham by E. L. Windham" and that on the original of such receipts given to respondent were expressed to be "on house and lot" or in similar terms. On the other hand, carbon copies of the receipts offered in evidence by Windham had been altered by adding the word "rent" to the above-quoted language. Whatever, however, the explanation of this discrepancy may be, it affords no aid in dealing with the primary issues hereinabove stated, except as to E. L. Windham.

In a case of the present character, it is elementary that the plaintiff (respondent) must prove his case by testimony that is clear and convincing, not by merely a preponderance of the testimony.

Respondent seeks to bolster his claim of agency on the part of Mr. Windham to convey his mother's life interest in the Spring Street property by the testimony showing that he collected for his mother the $50.00 monthly payments and remitted the same to her. In other words, it is his contention that an agency to collect money derived from the rental of a house implies the power to sell and convey the principal's real estate from which such money is derived. We find no merit in such contention. Granting that these monthly payments were given by E. L. Windham to his mother, the natural presumption is created that he delivered such payments to his mother as rental money, there not being a scintilla of testimony in the entire record that Mrs. Windham was ever advised that a contract for the sale of her property had been entered into by her son, who denies that any such contract was ever made.

*If* when the contract for the sale of this Spring Street property to Smothers had been executed by E. L. Windham also signing his mother's name thereto, and she had ratified same, or *if* E. L. Windham had undertaken to sign his mother's name to the alleged contract for the sale thereof to the respondent, and having issued the receipts for the monthly payments in the manner he did, and paid the same to his mother, it could be said that she had ratified the contract of

sale as made by her son and was estopped from relying on the fact that she had never personally signed the contract. However, all of the testimony is to the contrary. She signed the Smother's contract, and all parties concerned understood that Mrs. Windham would have to sign the contract with respondent before it would be binding on her. Furthermore, Mr. Windham, as aforesaid, denies having entered into such a contract with respondent as to his remainder interest, so the presumption is, if any presumption arises, that Mrs. Windham never had any knowledge that the $50.00 monthly payments represented anything but rent.

It had been suggested that the failure of Mrs. Windham to offer her testimony to the effect that she had no knowledge of a contract of sale to respondent of the premises in question created the inference that her testimony, if presented, would have been adverse to her claim that she had never entered into nor had any knowledge of a contract to sell the property to respondent. But there was not a scintilla of testimony that she ever had been advised of such a contract, and therefore there was no reason why she should have testified in the cause. She was unable physically to attend the reference, and while her testimony could have been taken by deposition, we think under the circumstances here, it was wholly unnecessary in so far as her life estate in the property. Of course, we recognize that "authority is not wanting for the proposition that where a party fails to produce the testimony of an available witness on a material issue in the cause, it may be inferred that the testimony of such witness, if presented, would be adverse." *Ex parte Hernlen,* 156 S. C. 181, 153 S. E. 133, 137, 69 A. L. R. 443. See also, *Robinson v. Duke Power Co.,* 213 S. C. 185, 48 S. E. (2d) 808, *Brock v. Carolina Scenic Stages & Carolina Cas. Co. of Burlington,* 219 S. C. 360, 65 S. E. (2d) 468, and the cited cases in the Robinson opinion. However, this postulate is not applicable to Mrs. Windham's position.

We think respondent has established a contract for the purchase of the interest in remainder of E. L. Windham but not for the life estate of Mrs. Windham. Frequently in such a case a court of equity will order a conveyance of the interest in remainder with an abatement of the purchase price to the extent of the value of the life estate. However, to do so here would necessitate supplying various details and adding terms and conditions never contemplated or agreed upon by the parties. In other words, the equities could not be adjusted without in effect making a new contract. In view of these circumstances, we think in the exercise of our discretion that we should decline specific performance.

The decree appealed from is reversed.

STUKES, TAYLOR and OXNER, JJ., and LITTLEJOHN, Acting Associate Justice, concur.