17259

CLARENCE D. AUST and LEE AUST, Respondents, v. GORDON
S. BEARD, AGNES H. BEARD and JULIA PICKENS
GAILLARD, Appellants

(96 S. E. (2d) 558)

*Messrs. Arthur W. Holler, Jr.,* and *Long & Long,* of Myrtle Beach, *for Appellants,*

*Messrs. H. T. Abbott* and *Richardson & Richardson,* of Conway, *for Respondents,*

February 11, 1957.

OXNER, Justice.

Clarence D. Aust and his wife Lee Aust brought this action for specific performance of an alleged parol executory contract by which Julia Pickens Gaillard agreed to sell and convey to them two lots on the King's Highway at Myrtle Beach, South Carolina. They alleged in their complaint that they went into possession under the contract and in reliance thereon made substantial improvements on the property. Gordon S. Beard and his wife Agnes H. Beard were made parties defendant under an allegation that they subsequently purchased the lots from Miss Gaillard with actual notice of the parol contract, and induced the vendor to violate same and sell the property to them by falsely representing that plaintiffs did not desire to carry out their contract.

Miss Gaillard defaulted. The Beard defendants demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was overruled. They duly filed an answer in which they admitted purchasing the property but denied the remaining allegations of the complaint, and further set up a plea of the statute of frauds.

There was a general order of reference to the Master for Horry County. After taking the testimony, he filed a report in which he found that plaintiffs had established the contract alleged in the complaint; that they entered into possession of the property under it and made substantial improvements; that there had been sufficient performance to take the contract out of the statute of frauds; and that the Beards purchased the property with full knowledge of said contract. He recommended that the deed from Miss Gaillard to the Beards be declared null and void and that upon plaintiffs reimbursing the Beards for the amount paid Miss Gaillard, that the latter be required to execute a deed conveying said property to them. The case was heard by the Resident Judge of the 12th Circuit on exceptions by the Beards to the re-

port of the Master. In a formal order he overruled all exceptions and sustained the report. From this order, the Beards have appealed.

The property involved consists of two lots at Myrtle Beach at the intersection of King's Highway and Second Avenue. The adjacent lot to the rear is owned by respondents. They constructed thereon a motor court and are now operating same. They desired to purchase the property in controversy in order to expand their motor court as future needs required and to avoid being cut off from the King's Highway, which constitutes a part of U. S. Highway No. 17, a heavily traveled route between New York and Florida. The only testimony in support of the oral contract was given by respondents themselves which may be briefly summarized as follows:

In response to a letter by respondents, Miss Gaillard, who resided in Columbia, went to Myrtle Beach in April, 1954, and discussed with them the sale of the lots. She offered to sell for $6,000. Respondents replied that they would take the lots at that figure but would need some time to raise the purchase price. Miss Gaillard said that there was "no big rush about that part of it" and "when you get your money together I will come down and we will close the deal." Later during the conversation Miss Gaillard stated that she did not "want to lose anything on the property or make anything" and if she found upon returning home and checking the records that she had more than $6,000 invested, she would let respondents know and they could send her a check for the excess. She assured them that this would not exceed $500. As she was leaving they expressed a desire to clean off the lots and erect some signs on them. Miss Gaillard replied they could do anything they wanted with the lots and to "just consider them yours."

There was testimony that shortly thereafter respondents cleared the lots of some heavy undergrowth, planted some grass and erected two large signs for the purpose of advertising their motor court. The latter necessitated laying two

electric underground cables. Respondents admitted, however, on cross-examination that prior to said alleged parol agreement, they maintained two small signs on these lots and that the Crown Service Station also had some signs thereon which were erected with the consent of Miss Gaillard.

According to respondents, they never heard anything further from Miss Gaillard after making the alleged oral agreement. Nor is there any evidence that they thereafter sought to contact her, although they say that they arranged with a friend to borrow $4,000 on the lots. The matter apparently remained at rest until February, 1955, when a Mr. Graham, a real estate agent at Myrtle Beach, came to see them and inquired if they would cooperate in having the lots rezoned. According to respondents' testimony, Mr. Aust objected, stating "I have an agreement to buy those lots from Miss Gaillard and I intend to buy them this spring." Graham then offered them $1,000 if they would go along with the rezoning. Aust says he again objected and told Graham that he had a contract with Miss Gaillard to buy the property and "was going to buy it that spring."

On March 10, 1955, Miss Gaillard conveyed the two lots to appellants for a consideration of $8,500. Shortly thereafter respondents noticed in the paper that an application had been made for rezoning the property. They thereupon went to see Mr. Beard who said he had bought it. During the latter part of March, 1955, this action was commenced.

Graham, the real estate agent, testified for appellants substantially as follows: During the early part of 1955 Mr. Beard, who lived across the highway from these lots, came to his office and inquired about the property. He told Beard that it could not be used for business purposes unless rezoned. On February 18th, he went to see Mr. Aust and inquired if there would be any objection to having the lots rezoned. Aust replied that he did not want it rezoned and remarked, "I would like to have that property but haven't got the money to buy it now." On March 3, 1955, Beard

·came to Graham's office and made an offer of $8,500 for the lots. He then contacted Miss Gaillard, who was in Columbia, by telephone and transmitted the offer. Miss Gaillard inquired about Aust. He told her that Aust had stated to him that he didn't have the money to buy the property. Miss Gaillard then accepted the offer. The title was examined, deed prepared and forwarded to Miss Gaillard, and the transaction in due course closed. Graham said that Miss Gaillard assured him she had no contract with Aust. The attorney who examined the title reported that it was clear except for some taxes which were later deducted from the purchase price. Miss Gaillard paid Graham a real estate commission of 5%.

Appellants denied knowledge of any contract with Aust and testified that they purchased the property through Graham in good faith and paid the purchase price of $8,500 after being furnished by their attorney with a certificate that the title was good and clear of all encumbrances except for some taxes. They said that they then made application to have this property rezoned. They admitted seeing Aust clean off the lots and erect some signs but stated that signs had been on the property before.

Miss Gaillard, who as previously stated was in default, did not testify on the trial of the case.

Although it is difficult to imagine a business man, especially when counsel has been employed to examine the title, buying real estate with actual knowledge that another was claiming possession under an alleged parol contract of sale, we have a concurrent finding of the Master and the Circuit Judge to that effect. We shall assume for the purpose of this discussion that there is evidence to support this conclusion and that appellants occupy no stronger position than if Miss Gaillard still had title and the action was brought solely against her for the performance of the alleged contract.[1]

---

[1] As to the right of a vendee in an executory contract for the sale of land to enforce specific performance against a grantee of the vendor with actual knowledge of the executory contract, see Annotation 87 A. L. R. 1505.

The first question for determination is whether there was a parol contract between respondents and Miss Gaillard. If not, there is nothing to enforce. *Finklea v. Carolina Farms Co.,* 196 S. C. 466, 13 S. E. (2d) 596. It was incumbent upon respondents to establish such a contract " 'by competent and satisfactory proof, such as is clear, definite, and certain.' * * * 'The degree of certainty required is reasonable certainty, having regard to the subject-matter of the contract'." *Hammassapoulo v. Hammassapoulo,* 134 S. C. 54, 131 S. E. 319, 320. In *Carson v .Coleman,* 208 S. C. 406, 38 S. E. (2d) 147, 149, it was stated: "Before a Court of Equity will specifically enforce a parol contract on the ground of part performance, all the material terms of the contract must be established to the satisfaction of the Court by proof that is clear, definite and certain." In *White v. Felkel,* 222 S. C. 313, 72 S. E. (2d) 531, 536, the Court quoted with approval the following: " 'The terms of a contract must be so clear, definite, certain, and precise, and free from obscurity or self-contradiction that neither party can reasonably misunderstand them, and the court can understand and interpret them, without supplying anything'." Also see *May v. Cavender,* 29 S. C. 598, 7 S. E. 489; *Anthony v. Eve,* 109 S. C. 255, 95 S. E. 513; *Johnson v. Windham,* 224 S. C. 502, 80 S. E. (2d) 234. In the last mentioned case the Court said that a mere preponderance of the testimony is insufficient.

We do not think the evidence in this case, even when considered most favorably from the standpoint of respondents, satisfies the foregoing standard of proof. It is entirely too general and uncertain to form the basis of a contract and the subsequent conduct of the parties rather indicates that they did not think they had a definite agreement. It is undisputed that after the conversation had at Myrtle Beach, there was no further contract between the parties and the matter remained at rest until almost a year later when respondents learned that Miss Gaillard had sold the property.

Mr. Aust may have accurately characterized the transaction when, according to his testimony, he told Graham in February, 1955, "I *intend* to buy them (the lots) this spring", and again that he "was *going* to buy it (the property) that spring." (Italics ours.) These expressions would seem to indicate a future intention to purchase and not a definite agreement already concluded to that effect. But be that as it may, the testimony certainly does not establish a definite and unequivocal agreement as to the purchase price. Respondents say the agreed amount was $6,000. Evidently Miss Gaillard did not so understand because respondents admit that later during the same conversation she told them that if she found that her investment exceeded $6,000, she would expect them to pay the excess. This fact cannot be brushed aside by respondents' statement that this did not have "anything to do with our contract", which they say had been previously agreed upon. This uncertainty as to the purchase price is reflected in Paragraph 3 of respondents' complaint, which reads as follows:

"That on or about April 20, 1954, the plaintiffs and the defendant, Julia Pickens Gaillard, entered into a contract or agreement for the sale and purchase of the property hereinafter described. The purchase price for said property being Six Thousand Dollars and No/100ths ($6,000.00) or Six Thousand Five Hundred Dollars and No/100ths ($6,500.00)."

It is rather interesting to observe that respondents both alleged in their complaint and testified that they were now willing to pay $8,500, the amount paid by the Beards to Miss Gaillard, and the decree for specific performance was on this basis.

There is another ground upon which specific performance must be denied. We do not think respondents have shown sufficient part performance to remove the contract from the operation of the statute of frauds.

The theory of the equitable doctrine of part performance, as pointed out in *Watts v. Witt*, 39 S. C. 356, 17 S. E. 822, 827, is that "a court of equity will not

permit a statute designed to prevent frauds to be used as an instrument to effect a fraud." In 49 Am. Jur., page 33, it is stated: "Nothing can be regarded as part performance to take a contract out of the operation of the statute which does not place the party in a situation which is a fraud upon him unless the contract is enforced." What is such part performance as will be sufficient has been the subject of much discussion and some diversity of opinion. See exhaustive annotation in 101 A. L. R. 923.

Where a party seeks to secure a parol agreement from the statute by showing possession and improvements put upon the land, he must show "acts of performance or part performance by him which relate clearly and unequivocally to such agreement, exclusive of any other relation between the parties touching the said premises." *Crawford v. Crawford,* 77 S. C. 205, 57 S. E. 837, 839. The same principle was announced in *Burns v. McCormick,* 233 N. Y. 230, 135 N. E. 273, as follows: "Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing."

In *McMillan v. McMillan,* 77 S. C. 511, 58 S. E. 431, 432, it was sought to enforce a parol contract for the sale of land to one John A. McMillan. In denying specific performance, the Court said: "There was evidence of some building, ditching, and perhaps other improvements made by John A. McMillan. But the nature and extent of the improvements taken in connection with the relation of the parties did not indicate an assertion of exclusive title by John A. McMillan. * * * Improvements of such extent that a reasonable man would not incur the expense of making them, except in reliance on a contract of purchase, must add strength to a claim of part performance of a verbal contract

of purchase, especially if made with the consent or knowledge of the legal owner. But John A. McMillan, as a reasonable man, might well have made these improvements expecting to receive the benefit of them without respect to any contract of purchase."

The improvements claimed in this case are the removal of some heavy undergrowth, planting some grass and the erection of two large electric signs. None of these could be properly classified as permanent improvements or of such character as to substantially enhance the value of the lots. The record does not show the cost of clearing the lots and planting the grass. Apparently this work was done by respondents themselves. They testified that the signs cost $500 but it is not shown that they could not be removed and used elsewhere. All of the foregoing circumstances that may be properly considered in determining the character and extent of improvements necessary to constitute part performance. Annotations 33 A. L. R. 1489 and 101 A. L. R., beginning on page 1067. In *Humbert v. Brisbane,* 25 S. C. 506, it was held that cutting and hauling wood from a lot "can scarcely be regarded as sufficient proof of such possession as would constitute part performance."

Nor can it be said that the making of these improvements is "clearly and unequivocally" referable to the alleged parol contract or that they are of such character as would only be made by an owner. These two lots lay between the King's Highway and respondents' motor court. By clearing them of undergrowth and planting grass the motor court could be more readily observed and would present a better appearance. Mr. Aust "as a reasonable man, might well have made these improvements, expecting to receive the benefit of them without respect to any contract of purchase." *McMillan v. McMillan, supra,* 77 S. C. 511, 58 S. E. 431. Respondents had previously maintained signs on the property. So did the Crown Service Station. The only change in this respect was that larger signs were erected.

Finally, there is nothing to show that it would be a fraud upon respondents not to enforce the alleged contract.

In denying specific performance, we have given respondents the benefit of certain testimony which appellants claim is inadmissible and have not overlooked the effect of the concurrent findings of fact by the Master and Circuit Judge. But the circumstances which we deem conclusive of this appeal are substantially undisputed.

Judgment reversed and case remanded for entry of order dismissing the complaint.

STUKES, C. J., TAYLOR and MOSS, JJ., and E. H. HENDERSON, Acting Associate Justice, concur.

