17703

Nat B. WILLIAMS, William Watson Barron, Joe Steele, Robert A. Gettys, and W. LeRoy Williams, Individually, and as citizens and taxpayers of the Town of Ebenezer, York County, S. C., for and in behalf of themselves and all other citizens and taxpayers similarly situated and interested who care to join in this action as parties-plaintiffs, Appellants, v. Russell JACOBS, Intendant, Floyd O. Hammond, Carl Mixon, Luther B. Horton, Wardens of the Town of Ebenezer, S. C., and John A. Hardin, Mayor and W. P. Sibley, Charles M. Sturgis, C. A. Reese, Jr., and W. B. Byers, as Aldermen of the City of Rock Hill, S. C., and Paul G. Plexico, as Internvenor, Respondents.

(116 S. E. (2d) 157)

*Charles W. McTeer, Esq.,* of Chester, *for Appellants,*

*Messrs. Spencer & Spencer, Charles B. Ridley* and *Robert M. Ward,* of Rock Hill, *for Respondents,*

September 13, 1960.

TAYLOR, Justice.

This appeal arises out of an action brought in the Court of Common Pleas for York County, seeking to have declared null and void all proceedings in the election held for the purpose of annexing the Town of Ebenezer in York County to the City of Rock Hill.

This matter was submitted to the hearing Judge upon the following Stipulation of Facts:

"1. That this action was commenced on the 5th day of December, 1959, for the purpose of having declared null and void a special election and annexation of the Town of Ebenezer with the City of Rock Hill, which special election was held on December 1, 1959, plaintiffs asserting invalidity thereof.

"2. That the City of Rock Hill is a city having more than 5,000 inhabitants and is chartered under the general laws of South Carolina.

"3. That the Town of Ebenezer is a town having a population of 633 inhabitants according to the 1950 census and was chartered under the general law of the State of South Carolina on December 18, 1923, as a town having less than 1,000 inhabitants.

"4. That certified copies of minutes of meetings of Rock Hill and Ebenezer councils and any correspondence between said municipalities, or their officials concerning the annexation proceedings, shall be received in evidence, subject to interpretation thereof by the Court.

"5. That both the Rock Hill and the Ebenezer councils investigated the sufficiency of the Annexation Petitions and officially found and determined as a result of their separate investigations that the Petitions were signed by a majority of the freeholders of the Town of Ebenezer. The records of these bodies indicate reports to them showing an initial count of approximately 240 freeholders and, based on the 240 freeholders count, not less than 137 valid signatures reported to the Rock Hill Council and not less than 135 valid signatures reported to the Ebenezer Council.

"6. The Rock Hill Council, after re-examination of its determination of sufficiency of the Annexation Petitions in the light of the allegations of plaintiffs' Complaint, reaffirmed its determination of sufficiency of the Petitions in a resolution adopted January 9, 1960, copy of which is to be received in evidence.

"7. Defendants' Exhibits 1 through 5 shall be received in evidence along with the supporting affidavits and analysis attached. They show a revised freeholders' count of 309. The revised count of 309 freeholders is to be accepted as correct and will include the original 240 freeholders as listed, as modified by said exhibits. A list showing the initial 240 count freeholders' tabulation, with 134 check marks thereon showing the initial signature count to this extent is to be received in evidence.

"8. Defendants Exhibits 1 through 5 analyze in detail the plaintiffs' claims for variation from an initial count of 135 valid signatures. They show a revised count of 175 signatures, including 11 signatures sought to be withdrawn by plaintiffs, through Exhibit 4. Of the 175 claimed signatures, part are dependant upon validity of instruments of ratification, filed with the City of Rock Hill, and to be received in evidence and construed by the Court. The Court shall determine whether or not 11 signatures on Exhibit 4 shall be withdrawn and excluded, as sought by plaintiffs, or retained and included as sought by defendants. No request for withdrawal was made to the City of Rock Hill. If withdrawal is allowed as claimed by plaintiffs, defendants then ask to be allowed to count 14 additional signatures admittedly never filed and received, but ready to have been offered if withdrawals and additions had been allowed, which the Ebenezer Council declined to permit.

"9. The original Petitions will be received in evidence.

"10. That the exact date of the presentation of the said petition to the two councils is in dispute and must be gathered from the minutes of meetings and correspondence between the Mayors.

"11. That on November 14, 1959, at a meeting of the Town Council of Ebenezer there was presented to said Council 11 affidavits of persons who signed said petition asking that their names be withdrawn.

"12. That on the 14th day of November, 1959, after the meeting, the Town Council of Ebenezer referred said petition

to A. C. Burgess for him to check and verify said petition and on the 16th day of November, 1959, the said A. C. Burgess made a written report to said Town Council which appears as part of the exhibits in this case.

"13. That a notice of special election was duly published on November 20, 1959, in the Rock Hill Evening Herald by the Commissioners of Election for York County, S. C.

"14. The said election was duly held in the Town of Ebenezer and in the City of Rock Hill, S. C. on December 1, 1959.

"15. That on December 1, 1959, there was also held the regular primary election for Mayor and City Councilmen of Rock Hill and the regular general election for councilmen of Ebenezer and the same polling precincts and managers were used in the regular election and the special election.

"16. That at such election 156 votes were cast in the Town of Ebenezer in favor of annexation and 89 votes were cast opposing said annexation; and 1,041 votes were cast in the City of Rock Hill in favor of annexation and 526 votes were cast opposing annexation.

"17. That the form of ballots used in said special election is shown by the defendants' Exhibit No.————attached hereto.

"18. That on December 5, 1959, action was duly commenced by service of Summons and Complaint attacking the validity of annexation of the Town of Ebenezer with the City of Rock Hill and service was duly made on the officials of Ebenezer and the City of Rock Hill.

"19. That, subsequently, on the 8th day of December, 1959, plaintiffs obtained a temporary injunction enjoining the City of Rock Hill from taking over the affiairs of the Town of Ebenezer.

"20. That on the 30th day of December, 1959, the Resident Circuit Judge of the Sixth Judicial Circuit ordered the plaintiffs to put up $4,000.00 injunction bond within three days and plaintiffs failed to post said bond.

"21. That defendants reserve in its entirety their legal position that the finding and determination of sufficiency of the petitions by the Rock Hill City Counicl and also by the Ebenezer Council is binding upon the court in the absence of a showing of abuse of discretion, caprice or fraud, which is not alleged; and that the plaintiffs are entitled to no affirmative relief under defendants' motion dated January 11, 1960; and the making of this Stipulation shall not constitute a waiver of said positions.

"22. The defendant City of Rock Hill reserves in its entirety its legal position that the procedure for reduction of corporate limits does not apply to the present annexation proceedings and that only the filing of the petitions with the City of Rock Hill and its finding of sufficiency thereof is of controlling legal effect and significance; and the making of this Stipulation shall not constitute a waiver of said position.

"23. Under the facts stipulated herein, the following questions are presented for determination by the Court:

"(a) 16 married couples own their property jointly and are included as two freeholders each in the revised count of 309 freeholders. As to these couples the petitions were signed in some cases 'Mr. & Mrs.,' and in some cases 'Mr.', and in some cases 'Mrs.'. Are the defendants entitled to count these signatures as claimed by them, as follows:

"(1) 8 signatures as 'Mr. & Mrs.', counted as 16 petitioners, after ratification by separate signature of husband and of wife.

"Yes . . . . . . No . . . . . .

"(2) 8 signatures as 'Mr.', counted as 16 petitioners, after ratification by separate signatures of wife and husband.

"Yes . . . . . . No . . . . . .

"(b) 4 wives owned property in their own names only and are included as 1 freeholder each in the revised count of 309 freeholders.

"As to these wives the petitions were signed in some cases as 'Mr. & Mrs.' and in some cases as 'Mr.' Are the

defendants entitled to count these signatures as claimed by them, as follows:

"(1) 1 signature as 'Mr. and Mrs.' counted as 1 petitioner after ratification by separate signatures of husband and wife, who state that wife signed initially (George Douglas).

"(2) 3 signatures as 'Mr.' counted as 3 petitioners after ratification by signature of wife or by separate signature of wife and husband.

"Yes . . . . . . No . . . . . .

"(c) 4 husbands owned property in their own names only and are included as 1 freeholder each in the revised count of 309 freeholders.

"As to these husbands the petitions were signed in some cases as 'Mr. & Mrs.' and in one case as 'Mr.' by 'Mrs.' Are the defendants entitled to count these signatures as claimed by them, as follows:

"(1) 3 signatures as 'Mr. & Mrs.', counted as 3 petitioners, after ratification by separate signatures of husband and wife. One of the 3 'Mr. & Mrs.' signatures was signed by the husband and owner according to the statement of ratification (L. H. Dickert). Defendants contend and plaintiffs agree that of the other two, the signatures show that one was signed by the husband, one by the wife (Hinson and Helms, respectively).

"Yes . . . . . . No . . . . . .

"Correct count should be 2 . . . or 1 . . . or 0 . . .

"(2) 1 signature as 'Mr.' signed by wife, counted as one petitioner after ratification by separate signatures of husband and wife (Proctor).

"Yes . . . . . . No . . . . . .

"(d) 2 corporate signatures by an officer on behalf of the corporation are questioned by plaintiffs on grounds of no evidence of corporate authority in the signing officer. The defendants have obtained instruments of ratification intended to evidence proper authorization for signature on behalf of the corporation.

"Are the defendants entitled to count these 2 signatures as claimed by them?

"Yes ...... No ......

"(e) 16 tenants in common, representing 4 estates, are being added to the freeholders' list, in addition to one other freeholder for each such estate already counted. Each of the 16 tenants in common have signed instruments of ratification asking that the signature by the initial freeholder counted as a petitioner with reference to the respective property owned by each, be treated as including the other tenants in common.

"Are the defendants entitled to claim 16 additional petitioners under the instruments of ratification mentioned?

"Yes ...... No ......

"(f) 11 affidavits requesting withdrawal of names from the Annexation Petitions were filed with the Ebenezer Council on November 14, but the Council declined to permit withdrawal. The minutes reflect the receipt, handling and final action on the petitions by the Ebenezer Council. Plaintiffs contend withdrawal of these names should be allowed. No request for withdrawal was made to the Rock Hill Council.

"(1) Should the 11 names be stricken from the valid signature list?

"Yes ...... No ......

"(2) If so, should defendants be allowed to add and count 14 additional signatures which would have been offered if any change in the petitions had been allowed?

"Yes ...... No ......

"24. As a direct result of adding additional freeholders, 9 additional petitioners who had already signed but were not counted because not on the original freeholders' list, shall be added to the original count of valid signatures of 135 as found by Ebenezer or 137 as found by Rock Hill as determined proper by the Court.

"What figure does the Court adopt?

"25. To the original count determined by the Court the following additional adjustments shall be made based on the

answers to the questions posed in paragraph 23 above, as follows:

"23  (a)  (1)  If yes, add 8. If no, no change.
          "(2)  If yes, add 8. If no, no change.
      "(b)  (1)  If yes, no change, If no, deduct 1.
          "(2)  If yes, add 1. If no, deduct 2.
      "(c)  (1)  If 3, no change. For any less deduct accordingly.
          "(2)  If yes, no change. If no, deduct 1.
      "(d)  If yes, no change. If no, deduct 2.
      "(e)  If yes, add 16. If no, no change.
      "(f)  (1)  If yes, deduct 11. If no, no change.
          "(2)  If yes, add 14. If no, no change."

The hearing Judge after hearing counsel and considering briefs duly filed his Order approving annexation of the Town of Ebenezer to the City of Rock Hill; and plaintiffs appeal, contending, first, that the statutes do not authorize the annexation of an incorporated town; second, that the petition for election was not signed by a majority of the freeholders; third, that the election was invalid; and Respondents present the additional sustaining ground that the action should have been dismissed for appellants' failure to give bond.

The first question must be resolved against contention of plaintiffs. See *Town of Forest Acres et al. v. Seigler et al.,* 224 S. C. 166, 77 S. E. (2d) 900.

Questions 2 and 3 relate to the validity of the petition and rely primarily upon whether or not the petition requesting the election was signed by a majority of the freeholders of the Town of Ebenezer, which in turn depends upon whether certain names placed upon the petition by others might thereafter be ratified.

The stipulation sets forth that the City Council of Rock Hill fixed by resolution the count of 309 freeholders. The Court subsequently reduced this number to 307 by elimination of two corporations. 154 freeholders' signatures, there-

fore, were required upon the annexation petition to constitute a majority of the 307 freeholders.

Sec. 47-12, Code of Laws of South Carolina, 1952, provides:

"To effect any such extension a petition shall first be submitted to the council by a majority of the freeholders of the territory which it is proposed to annex, accompanied by an adequate description thereof, praying that an election be ordered to see if such territory shall be included in the city or town."

After commencement of these proceedings, the City Council of Rock Hill re-examined the petition and declared that 137 freeholders signed the petition, that 9 persons counted as freeholders had not been counted as signers of the petition and should be added to the petition. The hearing Judge accepted the finding of the City of Rock Hill that the petition was signed by 137 freeholders, plus the 9 agreed to by the Council or a total of 146, and added 17 additional names for a total of 163, less the two corporations, or 161 valid petition signers by concluding that the questions posed in paragraph 23 of the Stipulations should be answered as follows:

23. (a) (1)—Yes ........................Add 8.
23. (a) (2)—Yes ........................Add 8.
23. (b) (1)—Yes .....................No change.
23. (b) (2)—Yes ........................Add 1.
23. (c) (1)—Yes .....................No change.
23. (c) (2)—Yes .....................No change.
23. (d)—No ...........................Deduct 2.
23. (e)—No ..........................No change.
23. (f) (1)—No .....................No change.
23. (f) (2)—No .....................No change.

A breakdown of this group of signers reveals that:

23 (a) (1) involves a situation where 8 married couples owned property jointly and were counted as 16 freeholders. The petition was signed "Mr. and Mrs." by either the husband or the wife. The respondents had both husband and

wife to ratify this signing after commencement of these proceedings.

23 (a) (2) involves a situation where 8 married couples owned property jointly and the petition was signed only by husband or wife and only the name of the husband or wife appeared thereon. The respondents had both husband and wife to ratify the signing after the commencement of these proceedings.

23 (b) (2) involves a situation where the title to the property was in the name of the wife but the husband signed his name to the petition.

23 (c) (1) involves a situation where property is owned by 3 husbands. Two husbands signed the petition "Mr. and Mrs." and the wife of the third signed "Mr. and Mrs."

23 (c) (2) involves a situation where the husband owned the property and the wife signed his name to the petition and her signing was subsequently ratified after commencement of these proceedings.

The question of ratification of signatures to a petition wherein the signer assumes no liability is one of novel impression in this State. We, therefore, must look to the wording of the statute and to the decisions of other jurisdictions for guidance.

Defendants to sustain their contention that the questioned signatures should be ratified relies upon the principle of agency that one may ratify the act of another and such ratification relates back to the time when the unauthorized act was done and makes it as effective from that time as though it had been originally authorized, and that therefore upon ratification the parties to all intents and purposes stand in the same position, in respect to rights and liabilities arising out of such act, as though the person assuming to act as agent had acted under authority previously conferred. That a valid ratification creates or establishes the relation of agency in respect to a matter as to which none before existed, and renders valid and binding the unauthorized act or contract

which before was invalid and such ratification operates not merely as presumptive evidence of previous authority, but *per se* as a confirmation of the act of the agent.

In 2 Am. Jur. 177, Agency, Sec. 222, the rule is stated to be:

"The doctrine is well recognized that in order that an act or contract may be the subject of ratification, there must be some relationship, actual or assumed, of principal and agent between the person alleged to have made such act or contract his own and the party by whom the contract was entered into or the act performed. Hence, the act or contract must purport to be done or made at its inception in behalf of the principal; there can be no ratification where it appears that the person who performed the act or made the contract was not at the time, and did not profess to be, acting on behalf of the alleged principal. * * *"

Our own case of *Carson et al. v. Coleman,* 208 S. C. 406, 38 S. E. (2d) 147, is cited as sustaining the principle of agency and with this we are in accord; but that case involved ratification of the wife of acts of the husband in the sale of land wherein she had received the benefits of monies paid as a result of the sale. We do not, therefore, consider it as being of aid in the problem now under consideration.

In *Lancaster et al. v. Town Council of Brookland,* 160 S. C. 150, 158 S. E. 233, 235, this Court had under consideration the proposed annexation of additional territory to a municipality and held that a legislative act confirming the annexation election, which had been held as a result of a petition which was not signed by a majority of freeholders in the territory to be annexed, was unconstitutional, it being stated therein that the town or city had the right to exend the corporate limits only in the following manner:

" 'A petition shall first be submitted to said council by a majority of the freeholders of the territory which it is proposed to annex, praying that an election be ordered to see if such territory shall be included in said town,' * * * This

general law which, it is declared, shall be uniform and is intended to apply to every city and town in the state, in effect says to Lexington and Batesburg and Saluda and others, 'You can only extend the corporate limits of your town by complying with the provisions of Section 4385 of the Code; you must have a petition signed by the majority of the free-holders of the territory you propose to annex before you may order an election.' "

The foregoing is not exactly on point as it involved the question of validating an election by legislative act, but its reasoning is of interest.

Also of interest is *Poole et al. v. Tiner et al.,* 208 S. C. 481, 38 S. E. (2d) 650, 651, which concerned signatures to petition for election of a school trustee. Some signers contended that they had been misled by fraudulent statements of those procuring signatures and sought to have their names removed therefrom. The request was refused and this Court affirmed, citing *Hawkins et al. v. Carroll et al.,* 190 S. C. 11, 1 S. E. (2d) 898, 126 A. L. R. 1028, reasoning that the public had vested interest in the pro-ceeding and it was no longer one where the rights of the signers only were to be considered.

In *State ex rel. Kugler v. Tillatson,* Mo. App., 304 S. W. (2d) 485, 487, the Supreme Court of Missouri had under consideration a question somewhat similar to the one at bar. Involved was the proposed change of a school district's boundaries under a statute which required that the petition be signed by qualified voters. Some of those signing did not personally sign the petition and it was contended that since the names of those who did not personally sign the petition were affixed with their personal knowledge and consent those names should constitute valid signatures of the person so consenting. The Court in passing upon this question stated:

"We are mindful of the rule that one may obligate himself by ratifying a signature made for him by another (80 C. J. S. Signatures § 6, p. 1291), but the signatures required

here carry no obligation. If it was not the rule that the taxpayer himself should sign, the sufficiency of the petition could not be determined by checking the signatures and it would be necessary to investigate by what authority names were affixed when it appeared that signatures upon the petition were not those of voters and taxpayers. It will readily be seen that this would place a burden upon the board which would be neither desirable nor in contemplation of the statute."

In instant case no obligation attached to those signing the petition; hence, there is no obligation to ratify. However, a certain amount of responsibility does attach—responsibility to give the matter at hand due consideration and responsibility to one's co-signer, and other residents of the area affected. The petition when filed should be in such form as to comply with the statutes providing therefor and of such substance that those charged with determining the sufficiency thereof might do so without it being necessary to investigate by what authority certain names were affixed thereto when it appears that such names are not the signatures of freeholders of the territory proposed to be annexed, thereby avoiding much confusion, as here, or in some instances the possibility of fraud.

Sec. 47-12, Code of Laws of South Carolina, 1952, requires as a prerequisite to such election that "a petition shall first be submitted to the council by a majority of the freeholders of the territory proposed to annex, * * *".

The names on the petition when filed and acted upon by the annexing body could not be thereafter ratified; and it is evident that unless the questioned names are counted the petition is deficient in that it was not by a majority of the freeholders of the territory to be annexed.

Defendants urge as a sustaining ground that this appeal should be dismissed because plaintiffs failed to post an injunction bond as required by Judge Gregory in his Order of December 30, 1959, and, therefore are

not entitled to affirmative relief in that they do not come into Court with clean hands. The proceedings were commenced December 8 by what was denominated "Rule to Show Cause and Temporary Restraining Order." No time was set therein for the hearing of the Rule. Defendants, however, did not move to vacate or modify such Order as they had a right to do upon giving 4 days' notice. On January 18, 1960, Honorable James Hugh McFaddin, presiding Judge, refused defendants' motion for dismissal of the action but dissolved the Temporary Restraining Order or Injunction as the case might be. If it be considered an Injunction and the mandatory bond not supplied, the Order in so far as it granted injunctive relief was a nullity. *Ex parte Jones et al.,* 160 S. C. 63, 158 S. E. 134, 77 A. L. R. 235. If it be considered a Temporary Restraining Order, no question arises. In either event, defendants were in nowise injured or prejudiced. *Arnold et al. v. City of Spartanburg et al.,* 201 S. C. 523, 23 S. E. (2d) 735. The additional sustaining ground is, therefore, deemed to be without merit.

For the foregoing reasons, we are of opinion that the Order appealed from must be reversed and the proposed annexation of the Town of Ebenezer to the City of Rock Hill declared null and void; and it is so ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.